## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

———————————

**MICHAEL WILSON, SR.**,

     Plaintiff,

     v.                                                    Civ. No. 11-0658 BB-KBM

**DEPUTY LAWRENCE MONTANO,
DEPUTY TORRES, JOHN DOE VCDC
BOOKING OFFICER OR EMPLOYEE,
WARDEN JOE CHAVEZ, and FORMER
SHERIFF RENE RIVERA,**

     Defendants.

### MEMORANDUM OPINION

     This action arises out of the warrantless arrest of Michael Wilson, Sr., and his subsequent detention at the Valencia County Detention Center for 11 days without the filing of criminal charges in any court or a probable cause determination before any judicial officer.  This matter is now before the Court on Defendants' motion to dismiss.  Doc. 25.  Having considered the briefs and relevant caselaw, the Court will grant in part and deny in part the motion.

### Facts and Procedural Background

     The Court derives the following facts from the Complaint, *see generally* Doc. 1, Ex. 1, and presumes them to be true for the sake of the present motions.  *See Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

     On December 18, 2010, Michael Wilson, Sr. was arrested at his home by Deputy Lawrence Montano, an individual employed by the Valencia County Sheriff's Office ("VCSO").  Deputy Montano did not have an arrest warrant.  After handcuffing Wilson, Montano asked Deputy Torres to transport Wilson to the Valencia County Detention Center ("VCDC").  Prior to booking Wilson into the VCDC, Deputy Montano prepared a criminal complaint listing the charge against Wilson as a misdemeanor offense.  Allegedly, however, neither Deputy Montano

nor Torres filed the criminal complaint in a court with jurisdiction or brought Wilson before a judicial officer for a probable cause determination.  Indeed, it is undisputed that Wilson was never provided with a probable cause determination.

Eleven days after his arrest, Wilson was released from the VCDC by an order of Belen Magistrate Judge, Danny Hawkes.  The release order stated that no complaint had been filed.  Then, on January 4, 2010 – after Wilson had been released from jail – Deputy Montano filed the misdemeanor criminal charge in a court with jurisdiction.  On April 11, 2011, the district attorney's office dismissed the criminal complaint.

Three months later, Wilson filed the instant lawsuit naming as defendants, Deputies Montano and Torres, John Doe, a Booking Officer at the VCDC, Joe Chavez, the Warden at the VCDC, and former VCSO Sheriff Rene Rivera.  In Count 1, Wilson asserts a violation of his Fourth Amendment right to a prompt judicial determination of probable cause.  He claims that both Deputies deliberately detained him without filing a criminal complaint or bringing him before a judicial officer for a probable cause determination.  Count II alleges that this same conduct violated Wilson's Fifth and Fourteenth Amendment rights.  Both Counts are directed against the Deputies in their individual capacity only.

Count III is directed at Warden Chavez in his individual and official capacities.  As background, the Complaint alleges that numerous individuals have been arrested without warrants and held at the VCDC without the filing of criminal charges or prompt probable cause determinations.  In this light, the Complaint alleges that the Warden established a policy of holding individuals without the filing of criminal charges and/or trained his staff to accept inmates without the filing of any charges.  As a result of these policies, customs, and/or the failure to train, Wilson was illegally detained at the VCDC.  Given the number of other individuals so held, the Complaint alleges that the Warden was deliberately indifferent to the

alleged constitutional violations, including the detention of Wilson without a probable cause determination.

Count IV sets out nearly identical allegations directed at former Sheriff Rivera in his individual and official capacities. Again, the Complaint alleges that there were numerous incidents where VCSO officers arrested individuals without a warrant and failed to file a criminal complaint or provide the detainee with a judicial determination of probable cause. These illegal detentions, including the detention of Wilson, were the result of a policy or custom established by the Sheriff. The Complaint further alleges that the Sheriff failed to train his staff, resulting in the routine incarceration of individuals without legal process. Given the number of violations, the Complaint alleges that the Sheriff was deliberately indifferent to the constitutional violations, including the illegal detention of Wilson, caused by his policy, custom, and/or failure to train.

Count V alleges a state law claim of false imprisonment against the Deputies and the Booking Agent. Finally, Count VI seeks prospective relief, including an injunction requiring the Defendants to establish policies and implement training to prevent future constitutional violations.

In addition to this case, two other cases were filed regarding the detention of individuals at the VCDC. In *Ortiz v. Benavidez*, 11cv0951, Jesse Ortiz alleges that he was arrested without a warrant by two Belen Police Department officers and detained at the VCDC for twelve days without a probable cause hearing. Doc. 1, Ex. 1 (filed in 11cv0951) ("Ortiz Complaint"). Among other things, Ortiz alleges that Warden Chavez established a custom or policy of holding citizens without pending charges or a probable cause hearing. The Ortiz Complaint further alleges that the Warden trained his staff to accept detainees without the filing of charges or probable cause hearings. In so doing, the Warden was deliberately indifferent to the violations of Ortiz and other detainees' constitutional rights.

In *Sarrett v. Cordova*, 11cv1021, four plaintiffs allege substantially similar circumstances regarding their warrantless arrest and subsequent detention at the VCDC without a probable cause hearing.  Doc. 5 (filed in CIV. No. 11-1021) ("Sarrett Complaint").  For example, the Sarrett Complaint alleges that Dustin Sarrett was arrested without a warrant by Deputy Roy Cordova of the VCSO.  Although Cordova prepared a criminal complaint, he did not file the complaint in any court of jurisdiction or provide Sarrett with a probable cause hearing before a judicial officer.  Sarrett was held for eleven days at the VCDC and then released by an order of Magistrate Judge Hawkes.  The same scenario allegedly repeated itself with Plaintiffs Oscar Levya, Mark Sanchez, and Patrick Marquez, all of whom were held at the VCDC without the filing of criminal complaints or probable cause determinations.  Based on these four incidents, the Sarrett Complaint alleges that both Warden Chavez and Sheriff Rivera implemented a policy or practice of holding citizens without filing criminal charges of providing prompt probable cause hearings.  The Sarrett Complaint further alleges that both the Warden and Sheriff trained their employees to accept detainees without probable cause determinations or the filing of complaints.  In so doing, the Sarrett Complaint alleges that both the Warden and Sheriff were deliberately indifferent to the constitutional violations suffered by the Sarrett plaintiffs and other detainees at the VCDC.

Due to the common questions of law and fact, this case, the *Ortiz* case, and the *Sarrett* case were consolidated.  Doc. 35.  In the instant order, however, the Court only considers the motion to dismiss filed by Deputies Montano and Torres, Warden Chavez, and Sheriff Rivera as it pertains to this, the Wilson case.  Doc. 25.

## Legal Standard

"[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

4

Accordingly, when reviewing the sufficiency of a complaint under Rule 12(b)(6), the Court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). This obligation to provide the factual "grounds" upon which the plaintiff is entitled to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Finally, in making its determination, the Court must accept all well-pleaded factual allegations as true, viewing them in the light most favorable to Wilson, and drawing reasonable inferences therefrom. *Id.* at 555–56; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In conjunction with their motion to dismiss, the individual Defendants also raise the defense of qualified immunity. "Although summary judgment provides the typical vehicle for asserting a qualified immunity defense," it may also be asserted in the context of Rule 12(b)(6). *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying a "strict two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (quoting *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)). The plaintiff must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendants' conduct. *Id.* Even if the law was clearly established, the Court must also determine whether "extraordinary circumstances – such as reliance on the advice of counsel or on a statute – so prevented the official from knowing that his or her actions were unconstitutional that he or she should not be imputed with knowledge of a clearly established right." *Shero v. City of Grove*, 510 F.3d 1196, 1204 (10th Cir. 2007).

**Analysis**

## I. Fourth Amendment Claim

Defendants present the Court with three separate bases for dismissing Wilson's Fourth Amendment claim against the Defendants in their individual capacity,[1] any one of which may be dispositive.  The Court addresses these arguments through the three-step qualified immunity analysis set forth in *Shero*, 510 F.3d at 1204.

### A. Whether Defendants Violated A Constitutional Right

In applying the qualified immunity test, the Court first addresses the question of whether Wilson has adequately alleged that Deputies Montano and Torres, former Sheriff Rivera, and Warden Chavez violated his constitutional rights; if not, the claim must be dismissed.  *Id.*

The Supreme Court's decisions in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), and *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975), provide the basis for Wilson's Fourth Amendment claim.  *Gerstein* held that the Fourth Amendment requires a determination of probable cause by a judicial officer "promptly" after a warrantless arrest.  Sixteen years later, in *County of Riverside*, 500 U.S. at 44, the Supreme Court revisited *Gerstein* because its "promptness" standard had proven to be unworkably vague.  The Supreme Court then held that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*."  *Id.* at 56; *see also Powell v. Nevada*, 511 U.S. at 80 ("prompt generally means within 48 hours of the warrantless arrest") (quotations omitted).[2]

---

[1] The official capacity claims against the Warden and Sheriff are not before the Court in the instant motion to dismiss.

[2] While a delay of over 48 hours is not per se unlawful, the Government bears the burden in such cases to "demonstrate the existence of a bona fide emergency or other extraordinary circumstance" that led to the delayed probable cause determination.  *County of Riverside*, 500 U.S. at 57.

It is apparent that Wilson was denied his right to a prompt probable cause determination. The Complaint alleges that Wilson was arrested without a warrant by Deputy Montano and taken to the VCDC by Deputy Torres.  Even though Deputy Montano prepared a criminal complaint listing a misdemeanor offense, he failed to file the complaint in any court with jurisdiction.  As a result, the criminal process was never initiated and Wilson was detained at VCDC for eleven days without a prompt probable cause determination.  These allegations, taken as true, are sufficient to establish a violation of Wilson's rights under the Fourth Amendment.

Nonetheless, Defendants argue that the Complaint fails to allege sufficient facts to establish the personal and/or supervisory liability of the Deputies, Warden, and/or Sheriff.  A § 1983 defendant sued in an individual capacity may be subject to personal and/or supervisory liability.  To establish personal liability, Wilson must show that the Defendants "caused the deprivation of a federal right."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").  The Complaint thus alleges the personal involvement of Deputies Torres and Montano in the warrantless arrest, and subsequent transportation of Wilson to the VCDC.  Doc. 1, Ex. 1, ¶¶ 20-23.  The Complaint further alleges that both Deputies failed to file a criminal charge against Wilson or bring him before a judge for a prompt probable cause determination.  *Id.* at ¶¶ 30-34.  This is not therefore a case where the complaint fails to allege facts showing which defendants deprived the plaintiff of a prompt probable cause determination.  *See, e.g.*, *Strepka v. Miller*, 28 Fed. Appx. 823, 828 (10th Cir. 2001) ("complaint was devoid of any allegations showing that any of the arresting officers caused or participated in the delay in providing plaintiff a prompt probable cause determination"); *Carpenter v. Oklahoma County*, 2009 WL 2778445, *5 (W.D. Okla. 2009) (same).  To the contrary, accepting the allegations in the Complaint as true, the Court concludes that Wilson has alleged sufficient facts to establish the personal liability of the Deputies for

failing to file a complaint, initiate the criminal process, and provide a prompt probable cause determination.

Even though the Deputies may be liable for their personal involvement, it does not necessarily follow that the Sheriff and Warden are also liable in their capacity as supervisors. The Supreme Court has made it clear that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, *supra*, 129 S.Ct. at 1948. That is not to say, however, that the Supreme Court completely abolished supervisory liability. According to the Tenth Circuit, § 1983 still "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or [his] subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). A plaintiff may establish a § 1983 claim against a defendant-supervisor by demonstrating that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.*

Wilson contends that both the Sheriff and Warden's personal conduct caused the failure to provide him with a prompt probable cause determination. Specifically, the Complaint alleges that the Warden "established a policy or custom of holding citizens without pending criminal charges until the court filed orders of release sua sponte." Doc 1, Ex. 1, ¶ 52. Similarly, the Complaint alleges that the Sheriff "established a policy or custom of allowing officers to arrest people and wait before filing charges." *Id.* at ¶ 64. Allegedly, these policies or customs were "a significant moving force behind Plaintiff's illegal detention." *Id.* at ¶¶ 59, 71. That is, because the Warden and Sheriff failed to require the filing of a written complaint, detainees were never

brought before a judge, but rather were held at VCDC without ever receiving a probable cause determination. Finally, the Complaint alleges that both the Sheriff and Warden failed to train or inappropriately trained their employees, again leading to the violations of Wilson's constitutional rights. *Id.* at ¶¶ 54, 69.

When these allegations are taken as true, the Court concludes that Wilson has alleged sufficient facts to support a claim of individual supervisory liability against both the Sheriff and Warden. The Tenth Circuit has recognized that "[a] plaintiff could establish the defendant-supervisor's personal involvement by demonstrating his personal participation, his exercise of control or direction, or his failure to supervise, or his knowledge of the violation and acquiesce [nce] in its continuance." *Dodds*, 614 F.3d at 1195 (quotations omitted). The use of the conjunction 'or' demonstrates that there are various ways – at the least four according to *Dodds* – to establish a supervisor's personal involvement. Here, the Complaint alleges that the Sheriff and Warden both implemented policies or customs that resulted in Wilson's illegal detention without a probable cause determination. Alternatively, the Complaint alleges that the Sheriff and Warden were personally involved due to a failure to train their employees. These allegations are sufficient to establish the personal involvement of the Warden and Sheriff. *Id.* at 1209 (Tymkovich, J., concurring) (explaining that a failure-to-train theory has been seen as a supervisory liability claim that, at bottom, implicates a supervisor's implementation of a policy).

What is more, the Complaint alleges that the Sheriff and Warden's personal involvement caused the alleged constitutional violation. While there are no allegations that either the Sheriff or Warden were physically involved in Wilson's detention,[3] they knew or should have known

---

[3] Similarly, Plaintiff has not alleged that he had any contact with either the Sheriff or Warden, nor has Plaintiff alleged that either the Sheriff or Warden had any specific knowledge or notice of Plaintiff's circumstances. The lack of such allegations does not, however, defeat Plaintiff's supervisory liability claim. *Dodds*, 614 F.3d at 1195 ("Personal involvement does not require direct participation because § 1983 states '"[a]ny official who "causes" a citizen to be deprived of her constitutional rights can also be held liable."'").

that their conduct – the failure to insure the filing of criminal charges in a court with jurisdiction – would result in the subsequent failure to provide detainees with prompt probable cause determinations, thereby violating the Fourth Amendment.  This chain of events is sufficient to satisfy the causal connection necessary for supervisory liability.  *Id.* at 1195–96 (a "causal connection" is alleged by claiming that a supervisor defendant "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive plaintiff of [his or] her constitutional rights") (quoting *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990)).

Finally, and most importantly, the Complaint alleges sufficient facts to establish the requisite state of mind for supervisory liability.  The state of mind required to establish a § 1983 claim based on supervisory liability is the state of mind requirement that is tied to the underlying constitutional provision at issue.  *Iqbal*, 129 S. Ct. at 1948.  To establish a violation of § 1983 by a supervisor, the plaintiff must establish at a minimum a deliberate and intentional act on the part of the defendant-supervisor to violate the plaintiff's legal rights.  *Porro v. Barnes*, 624 F.3d 1322, 1327-1328 (10th Cir. 2010).  A plaintiff can satisfy this prong by alleging that the defendant-supervisor had knowledge of the violation and acquiesced in its continuance.  *Dodds*, 614 F.3d at 1195.

The Complaint alleges that both the Warden and Sheriff acted with deliberate indifference to the routine constitutional violations occurring at the VCDC.  This conclusion is supported by Wilson's specific allegations as well as the allegation that there were numerous occasions where the VCDC and the VCSO held individuals for days and on some occasions weeks without law enforcement taking those individuals before a magistrate judge.  Doc. 1, Ex. 1, ¶¶ 51, 62.  Indeed, in the two companion cases, *Ortiz*, 11cv0951, and *Sarrett*, 11cv1021, it is alleged that five other individuals were arrested without warrants and detained at the VCDC without the filing of a criminal complaint or a prompt judicial determination of probable cause.  These allegations,

which are consistent across all three cases, and the inferences therefrom, are sufficient to establish that the Warden and Sheriff were deliberately indifferent to the violation of Wilson's constitutional rights, and that their conduct led to the deprivation of a prompt probable cause determination as guaranteed under the Fourth Amendment. *County of Riverside v. McLaughlin*, *supra*, 500 U.S. at 44; *Gerstein v. Pugh*, *supra*, 420 U.S. at 114.

## B. Whether the Right Was Clearly Established

The next issue is whether Wilson's individual-capacity claims against the Deputies, Warden, and Sheriff survive scrutiny under the second prong of the qualified immunity inquiry. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001) (quotation and citation omitted). This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, the relevant, dispositive inquiry is whether "[t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

The constitutional right to a prompt probable cause determination was clearly established at the time of the events in question; indeed, that right had been established more than three decades before Wilson's detention on December 18, 2010. *See Gerstein v. Pugh*, *supra*, 420 U.S. at 114 (1975); *County of Riverside v. McLaughlin*, *supra*, 500 U.S. at 44 (1991). Nonetheless, Wilson must do more than identify a clearly established constitutional right in the abstract and assert that the Defendants violated it: He must "articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009) (quoting *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504,

11

516 (10th Cir. 1998)).  Accordingly, the Court's task is to determine whether a reasonable officer would have understood that the detention of Wilson for multiple days without the filing of a criminal complaint or a prompt probable cause determination violated the Fourth Amendment.

*County of Riverside* imposes a constitutional duty on the police to provide a prompt probable cause determination.  There, the Supreme Court indicated that "the *police* should make every attempt to minimize the time a presumptively innocent individual spends in jail." *County of Riverside*, 500 U.S. at 58 (emphasis added).  It follows that the police have a constitutional duty to provide a prompt probable cause determination. *See Hallstrom v. City of Garden City*, 991 F.2d 1473, 1478 (9th Cir. 1993) (officers were subject to a constitutional duty to ensure that detainee be taken before a judicial officer "promptly after arrest.").

The Supreme Court further explained in *County of Riverside* that states are allowed to develop their own specific procedures to provide prompt probable cause determinations.  500 U.S. at 52-53.  Two provisions of the New Mexico Code spell out post-arrest procedures for all law enforcement officers.  Section 35-5-1 imposes a general duty on all peace officers to ensure that an individual, arrested without a warrant, is brought before a magistrate judge:

> Whenever a peace officer makes an arrest without warrant for a misdemeanor within magistrate trial jurisdiction, he shall take the arrested person to the nearest available magistrate court without unnecessary delay.

NMSA 1978, § 35-5-1.  Section 35-5-1 further requires that "a complaint shall be filed forthwith by the peace officer and a copy given to the defendant at or before the time he is brought before the magistrate." *Id.*.  Similarly, section 29-1-1 declares it the duty of every officer to "diligently file a complaint or information."  NMSA 1978, § 29-1-1.[4]  The law is thus clearly established in

---

[4] Section 31-1-5 also states that "[e]very accused shall be brought before a court having jurisdiction to release the accused without unnecessary delay."  NMSA 1978, § 31-1-5; *see also State v. Gibby*, 432 P.2d 258, 261 (N.M. 1967).  And section 3-13-2(A)(4)(d) provides that "[t]he police officer of a municipality shall . . . apprehend any person in the act of violating the laws of the state or the ordinances of the municipality and bring him before competent authority for examination and trial."  NMSA 1978, § 3-13-2(A)(4)(d).

New Mexico – peace officers must file a criminal complaint and subsequently ensure that an individual arrested without a warrant receives a prompt probable cause hearing before a magistrate judge.

In the instant case, Deputies Torres and Montano participated in the arrest and transportation of Wilson to the VCDC. They were thus charged with both a constitutional and statutory duty to ensure that a criminal complaint was filed and that Wilson received a prompt probable cause determination. While Deputy Montano did complete a criminal complaint charging Wilson with a misdemeanor, neither he nor Deputy Torres filed the complaint in a court with jurisdiction or brought Wilson before a magistrate judge for a probable cause determination. Both Deputies should have realized that this alleged conduct violated their clear duties under the Fourth Amendment and New Mexico law.

Similarly, the Sheriff and Warden also had a statutory duty to ensure that a criminal complaint was filed and that Wilson received a probable cause determination. Section 4–37–4(A)(1) states, in relevant part, that "[i]t is the duty of *every* county sheriff, deputy sheriff, constable and other county law enforcement officer to . . . enforce the provisions of all county ordinances." § 4–37–4(A)(1), NMSA 1978 (emphasis added). Section 33-3-28 further provides that jailers and any other employee of a local or county jail shall have the authority and status of a peace officer. § 33-3-28, NMSA 1978. Thus, both the Sheriff and Warden had a duty to carry out their statutory duties under section 35-5-1 as well as their constitutional obligations under *Gerstein* and *County of Riverside*. They should thus have understood that the detention of Wilson, along with numerous other detainees, for multiple days without any probable cause determination violated their duties under the Fourth Amendment and New Mexico law.

The Defendants, however, cite an unpublished opinion where the Tenth Circuit stated that it is unclear who has a duty to provide probable cause determinations.

> Although Supreme Court opinions have clearly established the right to a prompt probable cause determination, they have not established that the duty to ensure that right rests with the arresting officer.  Nor have any Tenth Circuit cases – or the majority of cases from other circuits – so held.

*See Strepka v. Miller*, *supra*, 28 Fed. Appx. at 830.  Defendants' reliance on *Strepka* is unpersuasive for three reasons.

First, in a decision published before *Strepka*, the Tenth Circuit stated that the right to a probable cause determination is clearly established.  *See Austin v. Hamilton*, 945 F.2d 1155, 1162-63 (10th Cir. 1991) *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304 (1995). The Tenth Circuit thus proceeded in *Austin* to deny summary judgment to federal agents who refused to provide detainees with any probable cause hearings.  *Id.*  Contrary to the assertions in *Strepka* then, the Tenth Circuit has established that officers, including federal agents, have a constitutional duty to provide prompt probable cause determinations.  In fact, the Court notes that *Strepka* did not mention the Circuit's prior decision in *Austin*.

Second, other courts have rejected Defendants' argument that "someone else" had a duty to provide a probable cause determination.  The Seventh Circuit's decision in *Luck v. Rovenstine*, 168 F.3d 323 (7th Cir. 1999), provides one such example.  There, the sheriff argued that he had no duty to ensure that detainees arrested without a warrant received a probable cause hearing or gained release.  *Id.* (stating that the sheriff "believes that someone else, perhaps the arresting officer or the prosecutor, is responsible for the period of confinement between a warrantless arrest and a judicial determination of probable cause").  The court found "unconvincing" the sheriff's "attempt to shrug off his federal constitutional responsibilities," stating that, "[i]n the final analysis, the sheriff is the custodian of the persons incarcerated in the jail, and as such, it is he who is answerable for the legality of their custody."  *Id.*  For the same reasons, this Court finds unconvincing the Defendants' attempts to shrug off their constitutional duty to provide prompt probable cause hearings, especially when New Mexico imposes a duty on all peace

officers to promptly bring a person arrested without a warrant before a judicial officer.  *See* NMSA 1978, § 35-5-1.

Finally, since *Strepka* was decided, the Sixth Circuit has twice held that officers have a clearly established duty to ensure an individual arrested without a warrant receives a prompt probable cause determination.  *Cherrington v. Skeeter*, 344 F.3d 631, 644 (6th Cir. 2003) (explaining that *County of Riverside* would have alerted any reasonable officer to plaintiff's right to a prompt judicial determination of probable cause; thus, individual defendant officers were not entitled to qualified immunity); *Drogosch v. Metcalf*, 557 F.3d 372, 378-79 (6th Cir. 2009) (same).  These holdings are consistent with the law long established in the Seventh Circuit.  *Luck*, 168 F.3d at 326; *Haywood v. City of Chicago*, 378 F.3d 714, 718 (7th Cir. 2004); *Armstrong v. Squadrito*, 152 F.3d 564, 579 (7th Cir. 1998); *see also Lingenfelter v. Bd. of County Comm'rs of Reno County*, 359 F.Supp.2d 1163, 1173 (D. Kan. 2005).  While these decisions are not binding on this Court, they are persuasive and further support the position that a reasonable officer would have understood that the detention of Wilson for multiple days without the filing of a criminal complaint or any probable cause determination violated the Fourth Amendment.  Accordingly, the Court concludes that Wilson has overcome the second hurdle of qualified immunity.

## C. Extraordinary Circumstances

Even if the law was clear, Defendants argue that extraordinary circumstance justified their failure to provide Wilson with a prompt probable cause determination.  *Shero v. City of Grove*, *supra*, 510 F.3d at 1204.  Defendants assert that section 33-3-12, NMSA 1978, makes it a crime to release a detainee without a court order.[5]  Accordingly, Defendants claim that no individually named Defendant could have released Wilson at the close of the 48 hour time limit articulated in

---

[5] NMSA 1978, § 33-3-12(B) provides: "Any jailer who deliberately and knowingly releases a prisoner without an order of release as provided in this section, except upon expiration of the prisoner's term of commitment, is guilty of a misdemeanor and shall be removed from office."

*County of Riverside* without committing a crime.  Defendants thus conclude that section 33-3-12 prevented them from realizing their clearly established duty to provide detainees with a prompt probable cause determination – an exceptional circumstance within the meaning of *Shero*.

In certain circumstances, qualified immunity may be warranted even if a defendant violates a clearly established constitutional right.  *See Roska v. Peterson*, 328 F.3d 1230, 1251-52 (10th Cir. 2003) (observing that when a right is clearly established, "a defendant should only rarely be able to succeed with a qualified immunity defense") (internal quotation marks omitted). "The circumstances must be such that the defendant was so prevented from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right." *Id.* (internal quotation marks omitted).  For example, an officer's "reliance on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question may absolve the officer from knowing that his conduct was unlawful." *Kay v. Bemis*, 500 F.3d 1214, 1221 n. 6 (10th Cir. 2007) (internal quotation marks omitted).  However, an officer's reliance on those authorities is only "a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional." *Roska*, 328 F.3d at 1252.  An authorizing statute, regulation, or policy does not render the officer's conduct reasonable per se. *Id.*

Here, section 33-3-12 fails to absolve the individual Defendants from knowing that their conduct was unlawful.  To begin, it is unclear whether section 33-3-12 even applies to the instant scenario.  Section 33-3-12(A) clearly states that jailers have an obligation to retain custody over any person subject to an "order of imprisonment."  However, no Deputy or other officer filed a criminal complaint that would have led to an order of imprisonment.  It is thus unclear whether section 33-3-12(A) required the Defendants to retain custody over Wilson and thus equally unclear whether section 33-3-12(B) prohibited any Defendant from releasing Wilson without an "order of release." *See Bickey v. Sheriff of Whitley County*, 2010 WL 1258165, *10-11 (N.D. Ind. 2010) (rejecting argument that sheriff could not release a detainee without judicial approval).

16

Regardless, even if section 33-3-12 applies, it is of little assistance to Defendants.  To be clear, Wilson is not arguing that the Defendants had an obligation to release him after the 48 hour time limit articulated in *County of Riverside* expired.  Rather, Wilson is arguing that the individual Defendants had a more basic duty, namely the duty to file a criminal complaint and provide him with a prompt probable cause hearing within the 48 hour time limit articulated in *County of Riverside*.  This request does not run afoul of section 33-3-12's prohibition on releasing a prisoner without a court order.  That is, the individual Defendants could have complied with their duty to provide a *County of Riverside*/*Gerstein* hearing without ever being forced to release Wilson in contravention of section 33-3-12.  As such, the Defendants cannot claim that section 33-3-12 prevented them from realizing their clearly established statutory and constitutional duties to file a criminal complaint and provide a detainee with a prompt probable cause determination.[6]  Therefore, the Court concludes that the Defendants are not entitled to qualified immunity on the Fourth Amendment claim.

## II. Fifth And Fourteenth Amendment Claims

Wilson alleges that Defendants' conduct violated his Fifth and Fourteenth Amendment rights to not be denied life, liberty, or property without due process of law.

### A. Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment states that no state shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  Wilson asserts that his detention without a probable cause determination ran afoul of this clause, which protects against improper use of the "formal constraints imposed by the criminal process."

---

[6] Indeed, if the Defendants had brought Wilson before a judge for a probable cause hearing, the presiding judge may have issued an order to release Wilson due to the lack of probable cause.

*Board of Regents v. Roth*, 408 U.S. 564, 572 (1972).  Wilson's reliance on the Fourteenth Amendment is misplaced.

The U.S. Supreme Court has made it clear that the Fourth Amendment, not the Fourteenth, governs claims regarding prompt probable cause hearings.  The Court stated in *Gerstein* that the Fourth Amendment "define[s] the 'process that is due' for seizures of persons or property in criminal cases, including the detention of suspects pending trial."  *Gerstein*, 420 U.S. at 125 n. 27.  Thus, in *Gerstein*, the Court dispensed with a separate analysis of the plaintiffs' detention without prompt probable cause determinations under the Due Process Clause.  *See Albright v. Oliver*, 510 U.S. 266, 288 n.2 (1994) (Souter, J., concurring) (noting that the Court dispensed with a separate analysis under the Due Process Clause in *Gerstein*).  The Court adopted the same approach in *County of Riverside*, analyzing plaintiffs' challenge to the manner in which the County of Riverside provided probable cause determinations under the Fourth Amendment, not the Fourteenth Amendment.  500 U.S. at 53-58.

The Tenth Circuit has further stated that the Fourth Amendment governs the amount of process required for suspects detained on criminal charges prior to a *Gerstein* hearing.  That is, "the Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause."  *Gaylor v. Does*, 105 F.3d 572, 574-75 (10th Cir. 1997) (emphasis in original and quotations omitted); *see also Luck v. Rovenstine*, *supra*, 168 F.3d at 326 (Fourth Amendment applies before the probable cause hearing and Due Process Clause applies after).

In the instant case, Wilson alleges that he was never provided a probable cause determination as required by *Gerstein*.  His allegations thus properly invoke the protections of the Fourth Amendment, not the more general procedural due process guarantees of the Fourteenth Amendment.  *See Gaylor*, 105 F.3d at 574-75.  The Court will therefore dismiss the Fourteenth

Amendment procedural due process claim[7] and focus its analysis on the Fourth Amendment as interpreted in *Gerstein* and *County of Riverside*.

## B. Fifth Amendment

Wilson has no Fifth Amendment claim for the simple reason that the Fifth Amendment due process clause only protects against due process violations caused by federal government actors. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n. 21 (1987) (explaining that the Fifth Amendment applies to federal actions while the Fourteenth Amendment applies to state actions); *Smith v. Kitchen*, 156 F.3d 1025, 1028 (10th Cir. 1997) ("From the earliest interpretations of this amendment, courts have agreed that the Fifth Amendment protects against actions by the federal government."); *Riley v. Camp*, 130 F.3d 958, 972 n. 19 (11th Cir. 1997) ("The Fifth Amendment obviously does not apply here – the acts complained of were committed by state rather than federal officials."); *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) ("The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor."). Here, Wilson has not alleged that any of the Defendants acted under authority of the federal government. Rather, all of the Defendants are state government actors, or put another way, acted under the color of state law. Hence, the Fifth Amendment does not apply.

---

[7] To the extent Wilson raises a substantive due process claim under the Fourteenth Amendment, the Court also dismisses it. "Substantive due process analysis is . . . inappropriate ... [where a] claim is 'covered by' the Fourth Amendment." *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). Here, Wilson's claim falls within the Fourth Amendment; thus, the Court need not consider the implications of substantive due process. *Id.*; *see also Albright v. Oliver*, *supra*, 510 U.S. at 274-75 (holding that a plaintiff's allegation that he was taken into custody and subjected to criminal prosecution without probable cause did not state a claim under the Fourteenth Amendment because matters of pretrial deprivations of liberty are governed solely by the Fourth Amendment).

### III. State Law False Imprisonment Claim

The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so. § 30-4-3, NMSA 1987; *Diaz v. Lockheed Elecs.*, 618 P.2d 372, 375–76 (N.M. App. 1980) (Sutin, J., specially concurring). The Complaint alleges that Defendant Montano deliberately chose not to file a criminal complaint against or bring Wilson before a magistrate judge for a probable cause hearing. Doc. 1, Ex. 1, ¶ 77. Despite allegedly knowing that this violated the law, both Deputies ignored their legal duties and imprisoned Wilson at the VCDC without legal process. *Id.* at ¶¶ 77-79. These allegations, taken as true, are sufficient to set forth a claim of false imprisonment.[8]  *Cf. Wallace v. Kato*, 549 U.S. 384, 389 (2007) (noting that the constitutional tort of false arrest/false imprisonment stems from unlawful "detention without legal process") (emphasis omitted); *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) ("If [an individual] has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment.").

Nonetheless, Defendants move to dismiss Wilson's false imprisonment claim on the grounds that (1) Wilson failed to plead a lack of probable cause, and (2) § 33-3-12 prohibited the Defendants from releasing Wilson without a court order. Neither of these arguments is availing. To begin, Wilson has alleged that the Deputies deliberately denied him legal process. More specifically, the claim focuses on the imprisonment of Wilson without *a probable cause hearing before a judicial officer*, not whether Wilson was initially arrested without probable cause. Given this focus, the claim does not turn on the existence or absence of probable cause for the initial arrest. Put another way, even if Wilson's initial arrest was lawful and based on probable

---

[8] Plaintiff's false imprisonment claim is also directed at Defendant Doe, the unknown booking officer(s) at the VCDC. In the instant opinion, the Court expresses no opinion as to the merits of this claim against Defendant Doe.

cause, liability for false imprisonment could still exist if, as alleged, the Defendants detained him at the VCDC without the required legal process – a probable cause hearing before a judicial officer.  *See* § 30-4-3; *Wallace*, 549 U.S. at 388-89.

Nor does section 33-3-12 relieve the Defendants of potential liability for false imprisonment.  Wilson claims that the Defendants should have filed a criminal complaint and provided him with a prompt probable cause hearing: the failure to do so constituted false imprisonment.  Clearly then, this claim does not turn on whether the Defendants had authority to release Wilson.  Thus, even though section 33-3-12 prohibits any public officer from releasing an individual held under an order of imprisonment,[9] it does not prevent public officers from providing legal process – such as the filing of a criminal complaint as required by section 35-5-1. In this light, section 33-3-12 does not justify Defendants' conduct, let alone bar the claim of false imprisonment.

For the foregoing reasons, the Court will deny the Defendants' motion to dismiss the state law claim for false imprisonment.

## IV. Standing to Seek Injunctive Relief

In addition to compensatory damages, Wilson seeks prospective relief in the form of an injunction requiring the Defendants to establish policies and undertake training to ensure that future detainees receive prompt probable cause hearings.  Doc. 1, Ex. 1, ¶ 84.  Defendants move to dismiss this claim on the grounds that Wilson lacks standing.  Specifically, Defendants argue that Wilson cannot establish the requisite injury-in-fact to bring a claim for prospective relief.[10] The Court agrees.

_____

[9] As noted previously, it is unclear whether section 33-3-12 even applies in the instant case.  *See supra*, section I.C.

[10] To be clear, the issue here is not whether Wilson can establish standing to seek compensatory damages, but rather whether he meets the preconditions for asserting an injunctive claim in a federal forum.  *See Lyons*, 461 U.S. at 109.

To establish Article III standing, a plaintiff must show that: (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The injury-in-fact requirement, at issue in the Defendants' motion to dismiss, is satisfied differently depending on whether the plaintiff seeks retrospective or prospective relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983). To seek prospective relief, a plaintiff must be "suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). This is so because, logically, "a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." *American Postal Workers Union v. Frank*, 968 F.2d 1373, 1376 (1st Cir. 1992).

Here, it is undisputed that Wilson was released from the VCDC on December 29, 2010. Doc. 1, Ex. 1, ¶ 24. Therefore, Wilson is no longer suffering "a continuing injury" that would confer standing to seek injunctive relief. *Tandy*, 380 F.3d at 1283. As a result, Wilson must establish "a  real and immediate threat of being injured in the future" in order to seek prospective relief. *Id.* To meet this requirement, Wilson alleges that he was detained at the VCDC in the past without a probable cause hearing; the Defendants have a continuing and ongoing practice of detaining individuals without probable cause hearings; and he could still be arrested and held at the VCDC for the same allegations on which he was originally held.

The possibility that the Plaintiff could be arrested again and detained at the VCDC without a probable cause hearing is insufficient to establish standing. In *Lyons*, the U.S. Supreme Court rejected similarly speculative allegations of future harm. 461 U.S. at 102. There, the plaintiff, Adolph Lyons, sought to enjoin the use of "chokeholds" by police officers. *Id.* at 105. The Court stated that Lyons' standing to seek such prospective relief hinged on "whether he was

likely to suffer future injury from the use of the chokeholds by police officers." *Id.*  Even though Lyons had been choked by the police, the Court explained that this past harm did "nothing to establish a real and immediate threat that [Lyons] would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id.*  The Court further emphasized that it was mere "conjecture" to believe that Lyons would again be involved with the police and subject to a chokehold.  *Id.* at 108.  In this light, the Court reasoned that Lyons' standing rested on the mere speculation that the police *might* stop him again and that, if stopped, the arresting officers *might* apply an unconstitutional chokehold.  Because it was no more than speculative that Lyons would again be subject to a chokehold, the Court held that he lacked standing to seek prospective relief.  *Id.* at 110.  The reasoning in *Lyons* applies with equal force to the instant case.

The rule that a claim does not become moot where it is capable of repetition, yet evades review, is likewise inapposite.  "[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality."  *Id.* at 109.  As we have explained, Wilson has not made such a demonstration.  Accordingly, because Wilson has failed to show that he is likely to be subjected again to the unconstitutional conduct at the VCDC, the Court will dismiss the claim for injunctive relief.

## Conclusion

In conclusion, the Court will deny the Defendants' motion to dismiss the Fourth Amendment and state law false imprisonment claims.  The Court will, however, grant the motion to dismiss the Fifth and Fourteenth Amendment Claims, as well as the claim for injunctive relief.

Dated this 23rd day of March, 2012.

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE