IN THE UNITED SATE DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL WILSON, SR. *et al.*,

    Plaintiffs,

    v.                                                Case No. 11-cv-658 KG/SCY

DEPUTY LAWRENCE MONTANO *et al.*,

    Defendants.

**MEMORANDUM OPINION AND ORDER ADOPTING
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on two motions to dismiss, which were originally filed in *Ortiz v. Benavidez*, No. 11-cv-951, before it was consolidated with this action. In these motions (*docs. 21 & 23*), Defendants Officer Martin Benavidez, Former Chief of Police Mike Chavez, and Warden Joe Chavez assert qualified immunity and ask the Court to dismiss Plaintiff Jesse Ortiz's claims that they violated his constitutional right to a prompt probable cause determination. On January 29, 2014, the Court referred both motions to United States Chief Magistrate Judge Karen B. Molzen. *Doc. 88*. After reviewing the record, she entered Proposed Findings and Recommended Disposition ("PFRD") advising that the Court deny Defendants' Motions.[1] *Doc. 89*. Defendant Joe Chavez did not file objections to the PFRD and has therefore waived his right to de novo review by this Court. *See United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."). Defendants Martin Benavidez and Mike Chavez, on the

---

[1] Because the parties submitted evidence for the Court's consideration, Judge Molzen treated Defendant's motions as motions for summary judgment under FED. R. CIV. P. 12(d). This Court will do likewise.

1

other hand, object to the PFRD on the basis that Judge Molzen improperly applied the law to the facts of this case. *See generally doc. 90*. Having reviewed these objections de novo, the Court will adopt the PFRD in part and modify it in part as further described below.

## I. Background

For the purposes of this motion, the following facts are undisputed. On April 2, 2010, Defendant Benavidez conducted a warrantless arrest of Plaintiff Ortiz. Complaint, *Doc. 1*, Ex. A ¶¶ 13-16 (filed in 11-cv-951). Shortly after the arrest, Defendant Benavidez brought Plaintiff to the Belen Police Department and drafted a criminal complaint charging Plaintiff with driving while intoxicated. *Id.* ¶¶ 33-34; *Doc. 24*, Ex. 1 at 11. In accordance with Belen Police Department policy, Defendant Benavidez "left the original copy [of this complaint] at the Police Department to be delivered to the District Attorney's office for its review and approval." *Doc. 24*, Ex. 1 ¶¶ 3-6, 12. Plaintiff meanwhile was taken to the Valencia County Detention Center, where he remained until April 14, 2010 without Defendant Benavidez or anybody else filing the complaint. *Doc. 1*, Ex. A ¶¶ 35-36, 39, 41 (filed in 11-cv-951). Due to this oversight, Plaintiff failed to receive a timely probable cause determination. *See generally docs. 80 & 81*. The parties agree that this was a violation of Plaintiff's constitutional rights. The only area of dispute is whether Defendant Benavidez and his former supervisor, Defendant Mike Chavez, can be held individually liable for this occurrence. *Id.*

Defendant Benavidez acknowledges that he did not file the complaint, even though he was required to do so under New Mexico law. *See* NMSA 1978, § 35-5-1. Nevertheless, in his affidavit, Defendant Benavidez attempts to avoid responsibility for Plaintiff's unlawful detention by testifying that (1) "no one from the District Attorney's office ever informed [him] that [the] criminal complaint [he] prepared regarding Plaintiff was deficient" and (2) he was personally

unaware that this complaint was never filed. *Doc. 24*, Ex. 1 ¶¶ 13-14. As he explains it, his conduct conformed to the Belen Police Department policy of forwarding complaints to the District Attorney's office for approval "before the complaint is filed with the Court." *Id.* ¶ 5. The unstated implication apparently being that the District Attorney should have filed the complaint. In any event, Defendant Benavidez disclaims having had any knowledge that this policy was resulting in criminal complaints not being timely filed. *Id.* ¶ 15.

Defendant Mike Chavez's affidavit is full of similar averments and vague declarations. *Doc. 24*, Ex. 3 ¶¶11-12, 20-22 (*e.g.*, "[i]t was never brought to my attention by any other person that criminal complaints prepared by the Belen Police Department Officers were not being timely filed with the Court."). Like Defendant Benavidez, he avoids identifying who was responsible for actually filing criminal complaints according to Belen Police Department policy. Instead, he makes liberal use of the passive voice to obfuscate the issue, repeatedly stating that it was the practice of the Belen Police Department to "present[] the criminal complaints to the District Attorney's Office for review and approval before filing with the Court." *Id.* ¶ 8; *see also id.* ¶¶ 7, 9-10, 23. Thus, the Court is left to guess what exactly Defendant Chavez means when he says he "trained officers to timely prepare criminal complaints and work with others to ensure their timely filing with the Court." *Id.* ¶ 5.

## II.    Standard of Review

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the burden shifts to the plaintiff to show (1) the defendant violated a constitutional right, and (2) the

constitutional right was clearly established at the time of defendant's conduct, i.e. the contours of the right were sufficiently well developed that a reasonable official should have known his conduct was unlawful. *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). Ordinarily, the defendant's assertion of qualified immunity fails if plaintiff satisfies this two-part test. *V-1 Oil Co. v. Wyoming, Dep't of Environment Quality*, 902 F.2d 1482, 1488 (10th Cir. 1990).

There is, however, an exception. Even if a defendant acts contrary to a clearly established constitutional dictate, the defendant may claim protection from liability if the defendant shows that extraordinary circumstances "so prevented [defendant] from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right." *Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003). This will happen only rarely, as the standard is objective and ignorance of the law is no defense. *Lawrence v. Reed*, 406 F.3d 1224, 1231 (10th Cir. 2005) (officials are responsible for knowing the law). On common example of an "extraordinary circumstance" is the existence of a statue, regulation, or official policy which explicitly authorizes the challenged conduct and which is not obviously unconstitutional. *Id.* at 1231-1232. While this type of policy does not automatically excuse unconstitutional behavior, it "militates in favor of the conclusion that a reasonable official would find that conduct constitutional." *Roska*, 328 F.3d at 1252.

As always, the overarching inquiry is whether the law at the time of defendant's conduct provided the defendant with "fair notice" regarding the legality of that conduct. *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). Qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate

the law." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

### III.   Officer Martin Benavidez

Defendant Benavidez argues that he is entitled to qualified immunity because the Belen Police Department practice of forwarding complaints to the District Attorney's office constitutes an "extraordinary circumstance" absolving him from responsibility for his unconstitutional behavior. *Doc. 90* at 2-3. In other words, Defendant Benavidez concedes that he had a clearly established duty to ensure that Plaintiff received a prompt probable cause determination. *See Wilson v. Montano*, 715 F.3d 847, 854 (10th Cir. 2013) (arresting New Mexico officer should have known that failure to "initiate the criminal process by filing criminal charges or otherwise ensur[ing] [the arrestee] was brought before a judge for a prompt probable cause determination" was unlawful); NMSA 1978, § 35-5-1 ("Whenever a peace officer makes an arrest without warrant for a misdemeanor within magistrate trial jurisdiction, he shall take the arrested person to the nearest available magistrate court without unnecessary delay. In such cases, a complaint shall be filed forthwith by the peace officer . . ."). Nonetheless, he contends that his failure to discharge this duty was objectively excusable because he "followed the policy of the Belen Police Department in arresting [Plaintiff] and preparing the criminal complaint." *Doc. 90* at 2.

A careful review of the evidence shows that this position is untenable. Compliance with internal procedures is not a per se defense to charges of unconstitutional conduct. *Roska*, 328 F.3d at 1252. Here, the undisputed facts support the conclusion that the Belen Police Department policy of forwarding complaints to the District Attorney's office should not have prevented Defendant Benavidez from understanding or discharging his constitutional duties. First, and most significantly, the Belen Police Department policy did not "explicitly sanction" Defendant's

failure to ensure Plaintiff received a probable cause hearing. *See id.* at 1253 (in determining whether an official's reliance on an official policy was objectively reasonable, a court should consider "the degree of specificity with which the [policy] authorized the conduct in question."). As Judge Molzen pointed out, Defendant Benavidez could have complied with the internal policy **AND** monitored the progress of the case to ensure that Plaintiff receive a timely probable cause hearing. *Doc. 89* at 6. The policy was not incompatible with Defendant fulfilling his constitutional duties.

Defendant complains that this reasoning unfairly burdens him with the responsibility of challenging an internal policy he reasonably believed to be lawful. *Doc. 90* at 2. While the Court understands this argument, and is sympathetic to Defendant's position, it is not persuaded. Significantly, the policy, as described by Defendant Benavidez himself, did not expressly release the arresting officer from the obligation of filing the criminal complaint. To the extent that the policy implicitly shifted the burden of filing the complaint from the arresting officer to some unidentified third party, the Court finds that Defendant could not have reasonably believed such a policy was constitutionally adequate. *See Lawrence*, 406 F.3d at 1232 (reliance on a patently unconstitutional policy cannot immunize an officer from liability). Notably, Defendant Benavidez's affidavit (1) never directly states that he had an expectation that some other individual would file the criminal complaint and (2) does not indicate that he ever received any assurances from his supervisors or employees at the District Attorney's office that someone else would file criminal complaints that he drafted. *See generally doc. 24*, Ex. 1. If such assurances existed, this would be a harder case. However, in their absence, it was clearly unreasonable for Defendant to renounce his statutorily-created duty to file criminal complaints on the unsubstantiated hope that someone else might file them on his behalf. Basically, the Belen Police

Department policy was too ill-defined to relieve Defendant Benavidez of his duty to ensure Plaintiff received a timely probable cause hearing.

This result is consistent with the principle that officers should only rarely be entitled to qualified immunity where their conduct violates clearly established law. *See V-1 Oil Co.*, 902 F.2d at 1488. Unlike the typical extraordinary circumstances case, Defendant Benavidez's behavior was not explicitly sanctioned by the advice of counsel or by a nondiscretionary statute, regulation, or policy such that "he should not be imputed with knowledge of an admittedly clearly established right." *Id.*

### IV.    Former Chief of Police Mike Chavez

Like Defendant Benavidez, Defendant Mike Chavez argues that he should not be blamed for Plaintiff's unconstitutional detention. As he points out, to hold an official liable under § 1983 for his role in supervising a constitutional violation, a plaintiff must establish three elements: (1) personal involvement, (2) causation, and (3) the requisite mental state. *See Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405, 435 (10th Cir. 2014). Because Defendant Chavez does not dispute that his conduct in personally maintaining the Belen Police Department policy of forwarding complaints to the District Attorney's office caused the deprivation of Plaintiff's constitutional right to a prompt probable cause determination, the Court will not address the first two elements. Instead, the Court focuses its attention on Defendant Chavez's contention that he did not act with a sufficiently culpable mental state – deliberate indifference – to be held liable for his behavior. *Doc. 90* at 4.

As an initial matter, the Court notes that it is not clear that "deliberate indifference" is the correct standard for evaluating Defendant Chavez's liability. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) ("Precisely what state of mind is

required for individual liability depends on the type of claim a plaintiff brings."); *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("Simply put, there's no special rule of liability for supervisors;" the mens rea for supervisory liability is same as the mens rea for direct liability). The Tenth Circuit has assumed without deciding that deliberate indifference is the correct mental standard for Fourteenth Amendment substantive due process claims. *Schneider*, 717 F.3d at 769. In this case, however, Plaintiff asserts a Fourth, not a Fourteenth Amendment claim. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 61 (1991) (the Fourth Amendment requires "a person arresting a suspect without a warrant [to] deliver the arrestee to a magistrate as soon as he reasonably can"). The traditional standard for Fourth Amendment claims is a reasonableness standard, which the Tenth Circuit has interpreted as requiring a showing of reckless – as opposed to merely negligent – conduct. *Thomas v. Durastanti*, 607 F.3d 655, 667-668 (10th Cir. 2010); *see also Dalcour v. City of Lakewood*, 492 F. App'x 924, 934 (10th Cir. 2012) (unpublished) (an officer whose miscommunication causes an unlawful entry may be held liable under the Fourth Amendment if this communication was reckless or intentional rather than merely negligent).

At any rate, whether the correct standard is "deliberate indifference" or "recklessness," the Court agrees with Defendant that there is insufficient evidence in the record to draw any conclusions about Defendant Chavez's mental state. In particular, there is a paucity of evidence concerning the exact terms of the Belen Police Department policy regarding the filing of complaints. Because of the cautious manner in which he wrote his affidavit, it remains unclear whether Defendant Chavez knew police officers were neglecting to file complaints. This information is critical to determining whether Defendant Chavez knew or should have known of the unconstitutional effects of the Belen Police Department policy.

Recognizing this gap in the evidence, Plaintiff's counsel initially filed a Rule 56(d) affidavit, which Defendant opposed, requesting discovery on the issue of Defendant Chavez's mental state. *Doc. 81*, Ex. 1. Because Judge Molzen recommended ruling in Plaintiff's favor, she did not analyze the merits of this request. Having reviewed Plaintiff's request, the Court finds that additional evidence would be helpful and that limited discovery on this issue is appropriate. *Weise v. Casper*, 507 F.3d 1260, 1267 n.7 (10th Cir. 2007) (ordering narrowly tailored discovery designed to "uncover only those facts needed to rule on the immunity claim" is entirely permissible). The Court will, therefore, allow Plaintiff to take a limited deposition of Defendant Mike Chavez concerning his understanding of the Belen Police Department policy regarding the filing of complaints and whether he had any reason to know this policy was not functioning as intended. Until this deposition has occurred, the Court will defer ruling on Defendant Chavez's assertion of qualified immunity.

IT IS THEREFORE ORDERED THAT:

1. Defendant Joe Chavez's motion to dismiss (*doc. 21*) is denied.
2. Defendant Martin Benavidez's assertion of qualified immunity, contained in *doc. 23*, is denied.
3. Plaintiff has until December 12, 2014 to depose Defendant Mike Chavez on the limited subject of his mental state in regards to Plaintiff's unconstitutional detention.
4. Once this deposition is complete, the Court will permit short, supplemental briefing on the issue of whether Defendant Mike Chavez had the requisite mental state to be liable for Plaintiff's injuries. Defendant Mike Chavez may file a brief on this issue within two weeks of the completion of his deposition. Plaintiff may file a response to this supplement, which will be due one week after Defendant files the supplement.

5. The Court will defer ruling on Defendant Mike Chavez's assertion of qualified immunity, until the above supplemental briefing is complete.

_____
UNITED STATES DISTRICT JUDGE