IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL WILSON, SR., et al.,

      Plaintiffs,

vs.                                      Civ. No. 11-658 KG/SCY
                                               Consolidated with

DEPUTY LAWRENCE MONTANO, et al.,      Civ. No. 11-951 KG/SCY
                                             Civ. No. 11-1021 KG/SCY

      Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants former Valencia County Detention

Center (VCDC) Warden Derek Williams, VCDC Warden Joe Chavez, Valencia County Sheriff

Louis Burkhard, former Valencia County Sheriff Rene Rivera, and Valencia County Sheriff's

Deputy Lawrence Montano's (collectively, Defendants)[1] "Defendants' Motion to Dismiss and

for  Summary Judgment,"[2] filed on August 20, 2015.  (Doc. 126).[3]  Plaintiffs filed a response[4] on

October 5, 2015, and Defendants filed a reply on November 11, 2015.  (Docs. 144 and 149).

---

[1] Former Warden Williams is a Defendant in Civ. No. 11-1021 KG/SCY, the Sarrett case, while
Warden Chavez is a Defendant in all three of the consolidated cases.  Sheriff Burkhard is a
Defendant in the Sarrett case; former Sheriff Rivera is a Defendant in both the Sarrett case and in
Civ. No. 11-658 KG/SCY, the Wilson case; and Deputy Montano is a Defendant in the Wilson
case.

[2] Defendants failed to comply with D.N.M. LR-Cv 7.1(a)'s concurrence requirement when they
filed Defendants' Motion to Dismiss and for Summary Judgment.  *See* Local Rule 7.1(a) ("a
motion that omits recitation of a good-faith request for concurrence may be summarily denied.").
Since Plaintiffs would not have concurred with Defendants' Motion to Dismiss and for Summary
Judgment, they are not prejudiced by Defendants' failure to comply with Local Rule 7.1(a).  In
the interest of justice, the Court will, therefore, decide Defendants' Motion to Dismiss and for
Summary Judgment on the merits.

[3] Unless otherwise noted, citations to the record and pleadings refer to docket entries in Civ. No.
11-658 KG/SCY.

Having considered Defendants' Motion to Dismiss and for Summary Judgment, the accompanying briefs, and the relevant evidence, the Court grants in part Defendants' Motion to Dismiss and for Summary Judgment.  Specifically, the Court dismisses with prejudice (1) the remaining 42 U.S.C. § 1983 Fifth and Fourteenth Amendment claims and claims for injunctive relief, (2) all of the claims against Sheriff Burkhard, and (3) the Section 1983 individual capacity claims against former Warden Williams, Warden Chavez, and former Sheriff Rivera.

### A.  Background

The Plaintiffs in these three consolidated cases, the Wilson, Ortiz, and Sarrett cases, allege that in 2010 various law enforcement officers within Valencia County arrested them and others similarly situated without warrants and booked them into VCDC.  Plaintiffs allege that VCDC wardens then held Plaintiffs and others without criminal charges having been filed by the arresting officers or probable cause determinations having been made by the magistrate courts.

### 1.  Relevant Claims

Plaintiffs bring Section 1983 claims against former Warden Williams and Warden Chavez, in both their individual and official capacities, for establishing a policy or custom of holding persons at VCDC without pending criminal charges.  Plaintiffs also contend that former Warden Williams and Warden Chavez trained their staff to accept inmates knowing that charges may not get filed, thereby violating the Fourth, Fifth, and Fourteenth Amendments.  Finally, Plaintiffs allege that former Warden Williams and Warden Chavez failed to supervise their staff to prevent people from being held without filed charges.

---

[4] Plaintiffs argue, *inter alia*, that Defendants' Motion to Dismiss and for Summary Judgment is premature, because discovery has not begun.  (Doc. 144) at 19-20.  Plaintiffs, however, do not seek to defer ruling on Defendants' Motion to Dismiss and for Summary Judgment under Fed. R. Civ. P. 56(d).  Having failed to seek relief under Rule 56(d), the Court will not consider Plaintiffs' argument that Defendants' Motion to Dismiss and for Summary Judgment is premature.

Similar to former Warden Williams and Warden Chavez, Plaintiffs bring Section 1983 claims against former Sheriff Rivera and Sheriff Burkhard, in their individual and official capacities, for establishing a policy or custom of allowing officers to arrest people and then wait to file charges, thereby resulting in people being detained without charges ever being filed. Plaintiffs also contend that former Sheriff Rivera and Sheriff Burkhard failed to train their staff not to violate the Fourth, Fifth, and Fourteenth Amendments by arresting Plaintiffs Dustin Sarrett and Michael Wilson, Sr., and others, without filing criminal charges.  Finally, Plaintiffs allege that former Sheriff Rivera and Sheriff Burkhard failed to supervise their staff to prevent people from being incarcerated without filed charges.

Plaintiff Wilson brings a Section 1983 Fourth Amendment claim against Deputy Montano in his individual capacity.  Plaintiff Wilson alleges that Deputy Montano violated the Fourth Amendment by failing to ensure that he received a prompt probable cause determination by an impartial judge. Generally, a probable cause determination is sufficiently prompt if it occurs within 48 hours of an arrest.  *Cty. of Riverside v. McLaughlin,* 500 U.S. 44, 56 (1991). Plaintiff Wilson also brought Section 1983 Fifth and Fourteenth Amendment claims against Deputy Montano, but the Court dismissed those claims.  (Doc. 53).  Plaintiffs bring similar Fifth and Fourteenth Amendment claims against other law enforcement officers in the Ortiz and Sarrett cases.

In addition, Plaintiffs bring claims for injunctive relief in the Ortiz and Sarrett cases.  The Court already dismissed the claim for injunctive relief in the Wilson case.  *Id.*

2.  *Facts Presented with Respect to Defendants' Motion to Dismiss and for Summary Judgment*

         a.  *Affidavit of Former Warden Williams*

Williams was VCDC warden until August 2010.  (Doc. 126-3) at 1, ¶ 2.  Neither he nor VCDC had a policy or custom of holding detainees without prompt probable cause determinations.  *Id.* at ¶¶ 3 and 4.  The policy at VCDC was to require a probable cause statement and criminal complaint[5] when a detainee was booked into VCDC.  *Id.* at ¶ 6.  VCDC policy was also to fax, on a daily basis, a list of new detainees to the magistrate court and to bring the detainees before the magistrate court at the next magistrate court session and to each subsequent magistrate court session until the magistrate court acted.  *Id.* at 2, ¶ 8.  VCDC further faxed the names of the named Plaintiffs every day to the magistrate court "beginning on their arrest date and continuing to the release date."  *Id.* at 4, ¶ 26.  Former Warden Williams did not know that any of the named Plaintiffs were being detained without a probable cause determination or were denied a hearing before a court.  *Id.* at 2, ¶ 9.

In 2007, former Warden Williams became aware that detainees were not being "processed quickly enough."  *Id.* at 2-3, ¶ 13.  Former Warden Williams then requested that the Valencia County magistrate judges issue a directive to law enforcement agencies to leave copies of the probable cause statements or criminal complaints at VCDC upon booking.  *Id.*  In fact, the Valencia County magistrate judges sent a letter dated November 28, 2007, to law enforcement

---

[5] The Court assumes that the policy refers to unfiled and filed criminal complaints.  The Court notes, for example, that former Warden Williams' affidavit and other evidence do not state that "filed" criminal complaints were required at booking, and a letter by former Warden Williams refers to preparing a criminal complaint for booking purposes and then discusses separately when to file the criminal complaint in magistrate court.  (Doc. 126-3) at 8.  Moreover, Deputy Montano attested that he left an unfiled criminal complaint at VCDC when he booked Plaintiff Wilson at VCDC.  (Doc. 126-22) at 1, ¶¶ 3-5.  Unless the Court otherwise specifies, references to presenting criminal complaints upon booking include unfiled criminal complaints.

officials, including former Sheriff Rivera, stating that it came to their attention that VCDC "does not require a Criminal Complaint/Probable Cause Statement at the time of intake to the facility." *Id.* at 6.  That failure on the part of VCDC apparently became a problem over the Thanksgiving weekend.  *Id.*  The magistrate judges noted that they could not make probable cause determinations within 48 hours after custody commences, as required by Rule 6-203, NMRA 1998, without probable cause statements and criminal complaints being "filed" at the time of intake at VCDC.  *Id.*  Consequently, the magistrate judges asked the law enforcement officials to instruct their officers "to file the probable cause statement, at the very least, if not the full criminal complaint at the time of intake."  *Id.*  The magistrate judges also noticed that "many complaints take several days to get" filed in magistrate court.  *Id.*

In a letter dated July 8, 2008, former Warden Williams wrote to law enforcement officials, including former Sheriff Rivera, that officers must present a criminal complaint and a statement of probable cause to VCDC's records department at the time of intake or the defendant would not be processed.  *Id.* at 9.  Defendant Williams explained that the purpose of this requirement is "to ensure that defendants are afforded due process under the law, to facilitate a probable cause determination and reduce Valencia County's exposure to liability."  *Id.* Defendant Williams decided to write this letter after receiving the magistrate judges' November 28, 2007, letter and after it came to Defendant Williams' "attention that some law enforcement personnel was [sic] not leaving the criminal complaints and the probable cause statement at the detention center for each and every detainee."  *Id.* at 3, ¶ 14.  Former Warden Williams also understood that under New Mexico law VCDC could not release a detainee without a court order.  *Id.* at ¶ 18.

### b. *Affidavit of Warden Chavez*

Chavez was first hired by Valencia County in February 2010 as Deputy Warden at VCDC and then became the Warden in August 2010.  (Doc. 126-4) at ¶¶ 2 and 3.  Neither Warden Chavez nor VCDC had a policy or custom of holding detainees without prompt probable cause determinations.  *Id.* at ¶¶ 4 and 5.  The policy at VCDC was to require a probable cause statement and criminal charge when a detainee was booked into VCDC.  *Id.* at ¶¶ 7 and 8. VCDC policy was also to fax, on a daily basis, a list of new detainees to the magistrate court and to bring detainees before the magistrate court at the next magistrate court session and to each subsequent magistrate court session until the magistrate court acted.  *Id.* at ¶ 10.  VCDC further faxed the names of the named Plaintiffs to the magistrate court every day.  *Id.* at ¶ 24.

Warden Chavez did not know that any of the named Plaintiffs were detained without a probable cause determination or hearing before the magistrate court.  *Id.* at ¶ 13.  Warden Chavez understood that, under state law, he could not release any detainee without a court order. *Id*. at ¶ 17.  Moreover, "[c]opies of the probable cause statement or criminal complaint were available to the detainees and the magistrate court at any time after booking."  *Id.* at ¶ 21. Magistrate judges would, in fact, request a copy of the probable cause statement or criminal complaint from VCDC "if a formal copy had not yet been filed with the court by law enforcement."  *Id.* at ¶ 25.

### c. *Affidavit of Former Sheriff Rivera*

Rivera was Sheriff prior to the end of December 2010 and was Sheriff at the time named Plaintiffs were arrested.  (Doc. 126-2) at ¶¶ 2 and 3.  Former Sheriff Rivera did not have a policy or custom of allowing deputies to arrest individuals and then delay the filing of the criminal complaints.  *Id.* at ¶ 5.  Former Sheriff Rivera's policy required that the arresting deputy

complete a criminal complaint and probable cause statement at the time of arrest and present those documents to the arrestee at the time of booking into VCDC. *Id.* at ¶ 6. Former Sheriff Rivera also directed the deputies to present the criminal complaints to the District Attorney's office for review prior to filing them in magistrate court. *Id.* at ¶ 8. Former Sheriff Rivera understood that, once the District Attorney's office approved a criminal complaint, staff from the Sheriff's office would pick up the complaint and have it filed in court. *Id.* at ¶ 10. The District Attorney's office also indicated to former Sheriff Rivera that it would "immediately" inform the Sheriff's office of any problems with the criminal complaints.

In 2008, former Sheriff Rivera became aware of untimely filed criminal complaints and probable cause statements. *Id.* at ¶ 13. Former Sheriff Rivera, therefore, reiterated to deputies, through training, of the policy that criminal complaints be completed at the time of arrest and provided, along with a probable cause statement, to the arrestee and VCDC at the time of booking, and that deputies "immediately" transmit the criminal complaints to the District Attorney's office for review. *Id.* at ¶ 14. In July 2008, after the training, former Sheriff Rivera instructed his staff to let him know of any problems about untimely filed criminal complaints or the lack of probable cause determinations. *Id.* at ¶ 15. Former Sheriff Rivera was, thereafter, unaware of any issues with untimely filed criminal complaints or lack of probable cause statements. *Id.* at ¶¶ 15 and 16. Furthermore, former Sheriff Rivera did not hear of any "systemic problems with the criminal complaints against the named plaintiffs." *Id.* at ¶ 9. Additionally, no one from the District Attorney's office informed former Sheriff Rivera of any untimely filed criminal complaints. *Id.* at ¶ 11.

### d. *Affidavit of Sheriff Burkhard*

Burkhard became Sheriff in January 2011. (Doc. 126-1) at ¶ 2. He was not Sheriff or employed with Valencia County at the time any of the named Plaintiffs were arrested. *Id.* at ¶ 3.

### e. *Deposition Testimony of Lemuel Martinez, Valencia County District Attorney*

The District Attorney is not responsible for filing criminal complaints. (Doc. 144-1) at 2. Typically, the arresting officer files the criminal complaint. *Id.* Martinez did not have a policy of instructing law enforcement officers not to file criminal complaints or delay filing the criminal complaints. *Id.*

### f. *Affidavit of Deputy Montano*

Deputy Montano arrested Plaintiff Wilson, without a warrant, in December 2010. (Doc. 126-22) at 1, ¶ 2. Deputy Montano completed a criminal complaint, a copy of which he provided to Plaintiff Wilson and to VCDC at the time of booking. *Id.* at ¶¶ 3 and 4. Deputy Montano also placed a copy of the criminal complaint in a file at the Sheriff's office for delivery to the District Attorney's office for approval to file in magistrate court. *Id.* at ¶ 5. Deputy Montano was not informed by the District Attorney's office that there was any objection to the form of the criminal complaint. *Id.* at ¶ 6. Deputy Montano then "assumed, in accordance with the department's policy, that the complaint and the probable cause statement had been filed with the magistrate court." *Id.* at ¶ 7.

### g. *Affidavits by Magistrate Court Managers*

Teresa Chavez, the Belen magistrate court manager since June 2008, observed that law enforcement agencies, including the Valencia County Sheriff's Department, failed to file criminal complaints within 48 hours of an arrest. (Doc. 129-1) at 1, ¶¶ 1-4. Chavez noted that this failure to file timely criminal complaints "happened frequently until sometime in 2011, when

a procedure was put in place." *Id.* at ¶ 5.  In fact, the Belen magistrate "staff would monitor the daily jail list of individuals in custody, then make calls to [law enforcement] agencies [about the failure to file criminal complaints] and send release orders as needed." *Id*. at ¶ 12.  *See also id.* at ¶ 7.  The Belen magistrate court also alerted VCDC daily about those persons being held without criminal charges being filed.  *Id.* at ¶ 8.

Carla Gonzales, the Los Lunas magistrate court manager from the early 1990's until 2013, also observed that law enforcement agencies, including the Valencia County Sheriff's Department, frequently failed to file timely criminal complaints.  (Doc. 129-2) at 1, ¶¶ 1-5. Gonzales further stated that "there was at least one meeting held with the judges, the various law enforcement agency representatives, and VCDC administrators prior to 2011 discussing the frequency of this problem and the need to stop this practice." *Id.* at 2, ¶ 15.

### h.  *Plaintiffs' Research*

Plaintiffs employed Alejandra Quijano to research the filing of untimely criminal complaints in Valencia County magistrate courts.  She produced a list of felony, DWI, and misdemeanor cases "filed between November 2008 and November 2011 in Los Lunas and Belen magistrate courts where complaints were filed more than 48 hours after the listed charge date." (Doc. 134-9) at 2, ¶ 10.  Quijano located "1075 cases where the criminal complaint was filed more than 48 hours after the charge date."  *Id.* at ¶ 11.  Plaintiffs acknowledge that some of those cases did not involve arrests.  (Doc. 138) at 4, ¶ b.

### B.  *Defendants' Motion to Dismiss and for Summary Judgment*

Defendants first move under Fed. R. Civ. P. 12(b)(6) to dismiss the Fifth and Fourteenth Amendment claims and the claims for injunctive relief raised in the Ortiz and Sarrett cases. Defendants base this motion to dismiss on the fact that the Court already dismissed those claims

in the Wilson case.  Plaintiffs do not oppose the motion to dismiss in their response and, therefore, have consented to the motion to dismiss.  *See* D.N.M. LR-Cv 7.1(b) (failure to respond "constitutes consent to grant the motion.").  For the reasons previously articulated in its Memorandum Opinion (Doc. 53), the Court will dismiss with prejudice the Fifth and Fourteenth Amendment claims and the claims for injunctive relief raised in the Ortiz and Sarrett cases.

Defendants then move for summary judgment on the individual and official capacity claims brought against Sheriff Burkhard.  Plaintiffs do not oppose that motion for summary judgment in their response and so have also consented to granting the motion for summary judgment as to Sheriff Burkhard.  *See* D.N.M. LR-Cv 7.1(b).  Hence, the Court will dismiss with prejudice the individual and official capacity claims against Sheriff Burkhard.

In addition, Defendants move for summary judgment on the individual capacity claims against the remaining Defendants on the basis of qualified immunity. Plaintiffs oppose this motion for summary judgment.

*C. Standard of Review*

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).  Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity.  *Id*.  At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id*.  The Court may in its discretion decide which of the two-parts of the qualified immunity test to address first.  *Id*. at 412.

D. *Discussion*

    1. *Former Warden Williams and Warden Chavez*

Defendants argue first that, under New Mexico law, it was not clearly established that VCDC had a duty to obtain prompt probable cause determinations for detainees. Defendants argue that, instead, the duty to ensure prompt probable cause determinations falls on the magistrate court. The Tenth Circuit, however, already ruled in the Wilson case that New Mexico law charged Warden Chavez with "ensuring arrestees received a prompt probable cause determination." *Wilson v.* Montano, 715 F.3d 847, 856-59 (10th Cir.), *cert. denied*, 134 S.Ct. 426 (2013). Former Warden Williams and Warden Chavez, therefore, had a clearly established duty to ensure that arrestees received prompt probable cause determinations.

To hold a supervisor, like a warden or sheriff, individually liable under Section 1983, a plaintiff must establish three elements: (1) personal involvement, (2) causation, and (3) the requisite mental state. *See Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014). At a minimum, to demonstrate the requisite mental state, a plaintiff must establish "a deliberate and intentional act on the part of the supervisor to violate the plaintiff's legal rights." *Wilson*, 715 F.3d at 858. Precisely what state of mind is required for individual liability depends on the type of claim a plaintiff brings. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). In this case, the Court previously noted that it is not clear whether a deliberate indifference or recklessness state of mind applies.[6] (Doc. 98) at 7-8. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown,* 520 U.S. 397, 410 (1997). "[R]eckless intent is established if the actor was aware of a known or

---

[6] Plaintiffs do not dispute that it is unclear whether to apply a deliberate indifference or recklessness state of mind standard.

obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences." *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1496 (10th Cir. 1992).

Defendants argue that former Warden Williams and Warden Chavez were not personally involved in causing Plaintiffs to not receive prompt probable cause determinations.  It is undisputed that both former Warden Williams and Warden Chavez did not have a policy of holding detainees without prompt probable cause determinations.  The Court also notes that former Warden Williams and Warden Chavez could lawfully hold detainees for 48 hours without a probable cause determination while attempting to ensure that those detainees receive probable cause determinations from the magistrate court within that 48-hour time-frame.  *See* Rule 6-203(A), NMRA 1998 ("The probable cause determination shall be made by a magistrate … judge promptly, but in any event with forty-eight (48) hours after custody commences and no later than the first appearance of the defendant whichever occurs earlier.").  To meet that time deadline, it is undisputed that (1) VCDC faxed a daily list of detainees, including the named Plaintiffs, to the magistrate court and brought detainees before the magistrate court at each available court session until such time as the magistrate court acted; and (2) VCDC made available to the magistrate court the probable cause statements and criminal complaints received at booking.  Despite these efforts, Plaintiffs were unlawfully incarcerated without prompt probable cause determinations.  It is undisputed that, even if former Warden Williams and Warden Chavez knew that Plaintiffs were unlawfully incarcerated, former Warden Williams and Warden Chavez could not release Plaintiffs without court orders.  *See* NMSA 1978, § 33-3-12(B) (1998 Repl. Pamp.) ("Any jailer who deliberately and knowingly releases a prisoner without an order of release … except upon expiration of the prisoner's term of commitment, is guilty of a

misdemeanor and shall be removed from office.").

Viewing the above evidence in the light most favorable to Plaintiffs, a reasonable jury could find that former Warden Williams and Warden Chavez were personally involved in holding Plaintiffs when they should have been released due to lack of prompt probable cause determinations.  However, a reasonable jury could not find that former Warden Williams and Warden Chavez necessarily "caused" the denial of prompt probable cause determinations by accepting probable cause statements and criminal complaints at the beginning of the 48-hour time-frame and then faxing daily lists of detainees, including the named Plaintiffs, to the magistrate court, and transporting them to magistrate court at each possible court session.  Even if Plaintiffs show causation, they have not provided sufficient evidence from which a reasonable jury could find that the proactive procedure to bring detainees before the magistrate court within 48 hours demonstrates deliberate indifference or reckless disregard of Plaintiffs' Fourth Amendment right to prompt probable cause determinations.  Hence, Plaintiffs have not demonstrated that a reasonable jury could find former Warden Williams and Warden Chavez liable under Section 1983 in their individual capacities.  Consequently, former Warden Williams and Warden Chavez are entitled to qualified immunity on the individual capacity claims.

### 2. *Former Sheriff Rivera*

Defendants assert that former Sheriff Rivera lacked the requisite personal involvement and mental state to be personally liable under Section 1983 for depriving Plaintiffs Wilson and Sarrett of their Fourth Amendment right to prompt probable cause determinations.  Plaintiffs, on the other hand, argue that former Sheriff Rivera's policy and training consisting of deputies providing VCDC with a probable cause statement and criminal complaint upon booking, and then forwarding the criminal complaint to the District Attorney's office for review prior to filing

in the magistrate court, caused Plaintiff Wilson, Plaintiff Sarrett, and others to be deprived of their Fourth Amendment right to prompt probable cause determinations.  Plaintiffs contend that former Sheriff Rivera should have, instead, trained his deputies to file the criminal complaints with the courts as required by state law.  *See* Rule 6-201(D) ("If the defendant is in custody, the complaint shall be filed with the magistrate court at the time it is given to the defendant.").  This argument, however, is flawed.

Requiring an arresting officer to file a timely criminal complaint, which can only be filed during the magistrate court's office hours, does not necessarily assure a prompt probable cause determination under the Fourth Amendment.  In *United States v. Bueno-Vargas*, the Ninth Circuit held that a Friday fax exchange between an arresting officer and the magistrate judge satisfied the Fourth Amendment's 48-hour requirement even though the criminal complaint was not filed until the following Monday morning.  383 F.3d 1104 (9th Cir. 2004).  The Ninth Circuit further held that the 48-hour requirement under the Fourth Amendment to conduct a probable cause determination "is distinct from" a requirement to promptly file a criminal complaint after a warrantless arrest.  *Id.* at 1107.  The Ninth Circuit explained that "[t]he procedural rules governing the filing of a complaint do not necessarily govern the probable cause determination necessary for the government to detain a warrantless arrestee."  *Id.* at 1108.  The Ninth Circuit noted that a criminal complaint ensures that a suspect is not arrested without probable cause, while the 48-hour requirement ensures "that no warrantless arrestee is detained, pending further proceedings, without probable cause."  *Id.*  After observing that filing a criminal complaint within 48 hours could comply with the prompt probable cause determination requirement, the Ninth Circuit "decline[d] to hold that a formal complaint is the only way to present evidence of probable cause to a neutral magistrate judge within 48 hours of a warrantless arrest."  *Id.*

Another Ninth Circuit case similarly held that a pre-printed probable cause application form which "provides for a sworn certification and refers to and incorporates 'official reports and records' that are prepared by law enforcement officers" and is presented to the court for review "satisfies the requirements of a post-arrest probable cause determination."  *Jones v. City of Santa Monica*, 382 F.3d 1052, 1056 (9th Cir. 2004).

These Ninth Circuit cases demonstrate that the key Fourth Amendment issue is whether former Sheriff Rivera's actions ensured prompt probable cause determinations, not whether he ensured the prompt filing of criminal complaints.  *See Wilson v. Montano*, 715 F.3d 847, 856-57 (10th Cir.), *cert. denied*, 134 S.Ct. 426 (2013) ("New Mexico law charged Sheriff Rivera with the responsibility of running the VCDC and ensuring arrestees received a prompt probable cause determination."); New Mexico Administrative Office of the Court 6/11 Memo (Doc. 126-23) (criminal complaint need not be filed in order for court to make probable cause determination). *See also Robinson v. Hecht*, 2004 WL 2413338, at *1 (D. Kan.) (no Fourth Amendment right to timely filed criminal charges, although Fourth Amendment protects right to prompt probable cause determination).  The majority of Plaintiffs' evidence, such as the affidavits from the magistrate court managers and Quijano's research, as well as the evidence regarding the District Attorney's review of criminal complaints concern the filing of criminal complaints, not whether detainees received prompt probable cause determinations.  Moreover, the November 28, 2007, letter from the magistrate judges, and the July 8, 2008, letter from former Warden Williams reflect conditions two or three years before the arrest of Plaintiffs Wilson and Sarrett in 2010. Those letters also concern what documentation to provide at the time of booking and the timely filing of criminal complaints, issues "distinct from" whether former Sheriff Rivera trained and supervised deputies to ensure prompt probable cause determinations.  Even accepting that former

15

Sheriff Rivera's training prior to 2008 was insufficient to ensure prompt probable cause determinations, former Sheriff Rivera attested that after the 2008 training to address the issues raised in the 2007 and 2008 letters from the magistrate judges and former Warden Williams, respectively, he was not aware of any problems with providing prompt probable cause determinations.  (Doc. 126-2) at ¶ 15.

On the other hand, Plaintiffs have not produced evidence from which a reasonable jury could find that former Sheriff Rivera knew that his actions would result in the deprivation of Plaintiff Wilson and Sarrett's Fourth Amendment right to prompt probable cause determinations, or that former Sheriff Rivera was aware that his actions created an obvious risk so great that it was highly probable that Plaintiffs Wilson and Sarrett's Fourth Amendment right to prompt probable cause determinations would be violated.  Plaintiffs, therefore, have failed to present sufficient evidence from which a reasonable jury could find that former Sheriff Rivera acted with either deliberate indifference or reckless disregard toward the Fourth Amendment rights of Plaintiffs Wilson and Sarrett to prompt probable cause determinations.  Thus, Plaintiffs have not carried their burden of showing that a reasonable jury could find former Sheriff Rivera liable under Section 1983 in his individual capacity.  As such, former Sheriff Rivera is entitled to qualified immunity on the individual capacity claims and so is entitled to summary judgment on those claims.

    *3.  Deputy Montano*

Defendants argue that because Deputy Montano completed a criminal complaint against Plaintiff Wilson, provided a copy of that complaint to Plaintiff Wilson and to VCDC at the time of booking, forwarded the criminal complaint to the District Attorney's office for review, was not informed by the District Attorney's office that there was a problem with the criminal

16

complaint, presumably knew that VCDC provided Plaintiff Wilson's name to the magistrate

court, and also presumably knew that VCDC transported Plaintiff Wilson to the magistrate court

at each available opportunity, Deputy Montano did not have had the requisite state of mind, i.e.,

deliberate indifference, to be liable for violating Plaintiff Wilson's Fourth Amendment right to a

prompt probable cause determination.

First, the Court will not presume that Deputy Montano knew about the VCDC procedures

to get detainees in front of the magistrate court. *See Lujan v. National Wildlife Federation*, 497

U.S. 871, 889 (1990) (courts do not presume missing facts in affidavit). Second, the Tenth

Circuit recently held that since the Fourth Amendment protects the right to a prompt probable

cause hearing, courts do not consider the state of mind of the government actor. *Webb v.

Thompson*, 643 Fed. Appx. 718, 725 (10th Cir. 2016). Instead, courts must rely on an objective

reasonableness standard. *Id.* Third, the Court notes that it already ruled in the Ortiz case that

"[c]ompliance with internal procedures is not a per se defense to charges of unconstitutional

conduct." (Doc. 98) at 5 (citing *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1252 (10th Cir.

2003)). The Court further held that a "policy of forwarding complaints to the District Attorney's

office should not have prevented Defendant [Officer] Benavidez from understanding or

discharging his constitutional duties." *Id.* The Court noted that Defendant Officer "Benavidez

could have complied with the internal policy **AND** monitored the progress of the case to ensure

that Plaintiff received a timely probable cause hearing." *Id.* at 6. The Court then determined that

"[t]he policy was not incompatible with Defendant fulfilling his constitutional duties." *Id.*

The Court concludes that viewing all of the evidence in the light most favorable to

Plaintiffs, Plaintiffs have presented enough evidence that a reasonable jury could find that

Deputy Montano violated Plaintiff Wilson's Fourth Amendment right to a prompt probable cause

determination, which right was clearly established at the time of Plaintiff Wilson's arrest. *See Wilson*, 715 F.3d at 855. Consequently, Deputy Montano is not entitled to qualified immunity on the Fourth Amendment Section 1983 individual capacity claim.

IT IS ORDERED that

1.  Defendants' Motion to Dismiss and for Summary Judgment (Doc. 126) is granted in part;

2.  the remaining Section 1983 Fifth and Fourteenth Amendment claims and claims for injunctive relief will be dismissed with prejudice;

3.  summary judgment will be entered in favor of  Sheriff Burkhard;

4.  all claims against Sheriff Burkhard will be dismissed with prejudice;

5.  summary judgment will be entered in favor of former Warden Williams, Warden Chavez, and former Sheriff Rivera on the Section 1983 individual capacity claims; and

6.  those Section 1983 individual capacity claims will be dismissed with prejudice.

UNITED STATES DISTRICT JUDGE