IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL WILSON, SR., et al.,

    Plaintiffs,

vs.

DEPUTY LAWRENCE MONTANO, et al.,

    Defendants.

Civ. No. 11-658 KG/SCY
Consolidated with
Civ. No. 11-951 KG/SCY
Civ. No. 11-1021 KG/SCY

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Joseph Vaughn's[1] Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted and for Summary Judgment on Grounds of Qualified Immunity and Memorandum of Law in Support Thereof (Motion),[2] filed August 20, 2015. (Doc. 125)[3]. Sarrett Plaintiffs filed a response[4] on September 18, 2015, and Stidham filed a reply on October 2, 2015. (Docs. 138 and 141). Having considered the Motion, the accompanying briefs, and the relevant evidence, the Court grants the Motion.

---

[1] Defendant Vaughn was formerly known as Joe Stidham. Because Plaintiffs Dustin Sarrett, Oscar Leyva, Mark Sanchez, and Patrick Marquez (Sarrett Plaintiffs), Plaintiffs in Civ. No. 11-1021 KG/SCY, named Joe Stidham as a Defendant, and documents refer to "Joe Stidham," the Court will, likewise, refer to Vaughn as "Stidham."

[2] Stidham failed to comply with D.N.M. LR-Cv 7.1(a)'s concurrence requirement when he filed the Motion. See Local Rule 7.1(a) ("a motion that omits recitation of a good-faith request for concurrence may be summarily denied."). Since Sarrett Plaintiffs would not have concurred with the Motion, they are not prejudiced by Stidham's failure to comply with Local Rule 7.1(a). In the interest of justice, the Court will, therefore, decide the Motion on the merits.

[3] Unless otherwise noted, citations to the record and pleadings refer to docket entries in Civ. No. 11-658 KG/SCY.

[4] Sarrett Plaintiffs argue, *inter alia*, that the Motion is premature, because discovery has not begun. (Doc. 138) at 6-7. Sarrett Plaintiffs, however, do not seek to defer ruling on the Motion under Fed. R. Civ. P. 56(d). Having failed to seek relief under Rule 56(d), the Court will not consider Sarrett Plaintiffs' argument that the Motion is premature.

*A. Background*

The Plaintiffs in these three consolidated cases, the Wilson, Ortiz, and Sarrett cases, allege that in 2010 various law enforcement officers within Valencia County arrested them and others similarly situated without warrants and booked them into the Valencia County Detention Center (VCDC).  Plaintiffs allege that VCDC wardens held Plaintiffs and others without criminal charges having been filed by the officers or probable cause determinations having been made by the magistrate courts.

   *1. Claims Relevant to the Motion*

Sarrett Plaintiffs filed a First Amended Class Action Complaint against, *inter alia*, Bosque Farms Police Department (BFPD) John Doe officers, BFPD Officer Steven Roberts, and former BFPD Chief of Police Stidham.  Sarrett Plaintiff Mark Sanchez alleges that Defendant Roberts arrested him on July 1, 2010, without a warrant, for misdemeanor crimes and booked him into VCDC that same day.  (Doc. 5), filed in Civ. No. 11-1021 KG/SCY, at ¶¶ 84 -86. Plaintiff Sanchez asserts that although Defendant Roberts wrote a criminal complaint prior to booking Plaintiff Sanchez into VCDC, Defendant Roberts did not file a criminal complaint at the time of the booking, or at any time during Plaintiff Sanchez's detention at VCDC, which ended on July 8, 2010.  *Id.* at ¶¶ 86, 87, and 88.  Plaintiff Sanchez further asserts that at no time during that detention did Defendant John Doe booking officer arrange to take him before a judge for a probable cause determination.  *Id.* at ¶¶ 89 and 95.  Finally, Plaintiff Sanchez alleges that Defendant John Doe booking officer did not release him from VCDC "when it became apparent no charges were filed." *Id.* at ¶ 96.  In Count I of the First Amended Class Action Complaint, Sarrett Plaintiffs bring a Section 1983 claim against Defendant Roberts, in his individual capacity for violating the Fourth Amendment's requirement for "a prompt probable cause

2

determination by an impartial judge." *Id.* at ¶¶ 23, 31, and 120.  Generally, a probable cause determination is sufficiently prompt if it occurs within 48 hours of an arrest.  *Cty. of Riverside v. McLaughlin,* 500 U.S. 44, 56 (1991).

In Count IX of the First Amended Class Action Complaint, Sarrett Plaintiffs allege that Stidham, in his individual and official capacities as BFPD Chief of Police, "established a policy or custom of allowing officers to arrest people and wait before filing charges," and that this policy or custom "in some circumstances … resulted in the arrest and detention of citizens with charges never being filed." *Id.* at ¶¶ 211 and 212.  Sarrett Plaintiffs also allege that Stidham failed to train and supervise his staff not to violate the Fourth Amendment[5] by arresting citizens who would "routinely [be] incarcerated without pending charges." *Id.* at ¶¶ 213 and 216.  Sarrett Plaintiffs further contend that Stidham acted with deliberate indifference to violations of the Fourth Amendment and that his policy "was a significant moving force behind" the illegal detentions. *Id.* at ¶ 214 and 218.  These allegations substantially mirror Plaintiff Michael Wilson, Sr.'s allegations against former Valencia County Sheriff Rene Rivera in the Wilson case. (Doc. 1-1) at ¶¶ 61-72.

    2. *Facts Relevant to the Motion*

        *a. Stidham's Affidavit*

Stidham was BFPD Chief of Police from July 2003 to May 10, 2010, prior to Plaintiff Sanchez's alleged unlawful detention in July 2010.  (Doc. 125-1) at ¶ 3.  While Stidham was BFPD Chief of Police, officers were trained "to file criminal complaints immediately after making warrantless arrests." *Id.* at ¶ 4.  To the best of Stidham's knowledge, BFPD officers

---

[5] The Court notes that although Count IX originally included references to violations of the Fifth and Fourteenth Amendments, the Court has dismissed the claims based on those alleged violations.  (Doc. 159).

acted in accordance with that training. *Id.* at ¶ 5. Moreover, while Stidham was BFPD Chief of Police, he was not "made aware of any instance where a Bosque Farms Police Officer failed to promptly file a criminal complaint after making a warrantless arrest." *Id.* at ¶ 6.

### b. *Correspondence to Stidham*

Valencia County magistrate judges sent a letter dated November 28, 2007, to law enforcement officials, including Stidham, stating that it came to their attention that VCDC "does not require a Criminal Complaint/Probable Cause Statement at the time of intake to the facility." (Doc. 126-3) at 6. That failure on the part of VCDC apparently became a problem over the Thanksgiving weekend. *Id.* The magistrate judges noted that they could not make probable cause determinations within 48 hours after custody commences, as required by Rule 6-203, NMRA 1998, without probable cause statements and criminal complaints being "filed" at the time of intake at VCDC. *Id.* Consequently, the magistrate judges asked the law enforcement officials to instruct their officers "to file the probable cause statement, at the very least, if not the full criminal complaint at the time of intake." *Id.* The magistrate judges also noticed that "many complaints take several days to get" filed in magistrate court. *Id.*

In a letter dated July 8, 2008, Sarrett Defendant former VCDC warden Derek Williams wrote to law enforcement officials, including Stidham, that officers must present a criminal complaint and a statement of probable cause to VCDC's records department at the time of intake or the defendant will not be processed. (Doc. 126-3) at 9. Defendant Williams explained that the purpose of this requirement is "to ensure that defendants are afforded due process under the law, to facilitate a probable cause determination and reduce Valencia County's exposure to liability." *Id.* Defendant Williams decided to write this letter after receiving the magistrate judges' November 28, 2007, letter and after it came to Defendant Williams' "attention that some

4

law enforcement personnel was [sic] not leaving the criminal complaints and the probable cause statement at the detention center for each and every detainee." *Id.* at 3, ¶ 14.

### c. Plaintiffs' Research

Plaintiffs employed Alejandra Quijano to research the filing of untimely criminal complaints in Valencia County magistrate courts. She produced a list of felony, DWI, and misdemeanor cases "filed between November 2008 and November 2011 in Los Lunas and Belen magistrate courts where complaints were filed more than 48 hours after the listed charge date." (Doc. 134-9) at 2, ¶ 10. Quijano located "1075 cases where the criminal complaint was filed more than 48 hours after the charge date." *Id.* at ¶ 11. Sarrett Plaintiffs acknowledge that some of those cases did not involve arrests. (Doc. 138) at 4, ¶ b.

### d. Affidavits by Magistrate Court Managers

Teresa Chavez, the Belen magistrate court manager since June 2008, observed that law enforcement agencies, including BFPD, failed to file criminal complaints within 48 hours of an arrest. (Doc. 129-1) at 1, ¶¶ 1-4. Chavez noted that this failure to file timely criminal complaints "happened frequently until sometime in 2011, when a procedure was put in place." *Id.* at ¶ 5. In fact, the clerks at the Belen magistrate court called the records departments of the law enforcement agencies about the failure to file criminal complaints. *Id.* at ¶ 7.

Carla Gonzales, the Los Lunas magistrate court manager from the early 1990's until 2013, also observed that law enforcement agencies, including BFPD, frequently failed to file timely criminal complaints. (Doc. 129-2) at 1, ¶¶ 1-5. Gonzales further stated that "there was at least one meeting held with the judges, the various law enforcement agency representatives, and VCDC administrators prior to 2011 discussing the frequency of this problem and the need to stop this practice." *Id.* at 2, ¶ 15.

B. *The Motion*

Stidham argues first that the Court should dismiss Count IX of Sarrett Plaintiffs' First Amended Class Action Complaint under Fed. R. Civ. P. 12(b)(6), because Stidham is entitled to qualified immunity on the individual capacity claims, and Sarrett Plaintiffs fail to state plausible official capacity claims against him. Second, Stidham argues, in the alternative, that the Court should grant him summary judgment on Count IX under Fed. R. Civ. P. 56(a), because he is, once again, entitled to qualified immunity on the individual capacity claims, and to summary judgment on the official capacity claims.

C. *Discussion*

   *1. The Rule 12(b)(6) Motion to Dismiss*

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id.* at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).

      *a. Individual Capacity Claims*

Like Stidham, Defendant former Sheriff Rivera moved in the Wilson case to dismiss individual capacity claims, claims almost identical to the individual capacity claims brought

against Stidham, on the basis of qualified immunity. In May 2013, the Tenth Circuit upheld the Court's decision to deny Defendant former Sheriff Rivera's motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 859-60 (10th Cir.), *cert. denied*, 134 S.Ct. 426 (2013). Because the Tenth Circuit upheld the Court's decision to deny a motion to dismiss individual capacity claims almost identical to those brought against Stidham, the Court is compelled for the reasons stated by the Tenth Circuit to, likewise, deny Stidham's Rule 12(b)(6) motion to dismiss the Count IX individual capacity claims on the basis of qualified immunity.

        b. *Official Capacity Claims*

Suing an individual in his official capacity is essentially the same as suing a municipality. *Arden v. McIntosh*, 622 F. App'x 707, 712 n.3 (10th Cir. 2015) (quoting *Porro v. Barnes,* 624 F.3d 1322, 1328 (10th Cir. 2010)). Therefore, the Court applies the municipal liability standard to assess an official capacity claim. *Id.* (citing *Porro,* 624 F.3d at 1328)). To state a claim for municipal liability, a plaintiff must allege the existence of (1) an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury alleged; and (3) deliberate indifference on the part of the municipality. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

A plaintiff may allege the existence of a municipal policy or custom in the form of (1) an officially promulgated policy; (2) an informal custom amounting to a widespread practice; (3) the decisions of employees with final policymaking authority; (4) the ratification by final policymakers of the decisions of their subordinates; or (5) the failure to adequately train or supervise employees. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). A plaintiff must also allege that the municipality is the "moving force" behind the constitutional violation. *Smedley v. Corr. Corp. of Am.*, 175 Fed.Appx. 943, 946 (10th Cir.2005); *City of*

*Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("It is only when the 'execution of the government's policy or custom...inflicts the injury' that the municipality may be held liable under § 1983."). Furthermore, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *City of Okla. City v. Tuttle,* 471 U.S. 808, 824 (1985). In addition,

> [t]he deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction[.]

*Barney v. Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir.1998). Deliberate indifference for municipal liability purposes is evaluated from an objective standpoint. *Id.* at 1308 n. 5.

Viewing the First Amended Class Action Complaint in the light most favorable to Sarrett Plaintiffs, the Court can reasonably infer from the complaint that the municipal policy or custom at issue takes the form of Stidham's alleged failure to adequately train or supervise BFPD officers on filing timely criminal complaints. *See* (Doc. 5), filed in Civ. No. 11-1021 KG/SCY, at ¶¶ 213, 215-17. Sarrett Plaintiffs also clearly allege that this policy or custom to not adequately train or supervise BFPD officers was the "moving force" behind the violation of Plaintiff Sanchez's Fourth Amendment rights, which Sarrett Plaintiffs contend encompasses Plaintiff Sanchez's right to a prompt probable cause determination. *See id.* at ¶¶ 211-12, 216-18.

However, Sarrett Plaintiffs have not sufficiently alleged that the policy or custom not to train or supervise BFPD officers on filing timely criminal complaints constitutes a facially unconstitutional policy so that a single incident, the incident alleged by Plaintiff Sanchez, is

enough to show a causal connection between that policy or custom and the deprivation of the right to a prompt probable cause determination. As the Court discussed in another Memorandum Opinion and Order (Doc. 158), the filing of a timely criminal complaint "is distinct from" ensuring a prompt probable cause determination under the Fourth Amendment. *See United States v. Bueno-Vargas*, 383 F.3d 1104, 1107-08 (9th Cir. 2004). Hence, a policy or custom not to train or supervise BFPD officers to file timely criminal complaints does not necessarily translate to a policy or custom not to train or supervise BFPD officers to otherwise ensure prompt probable cause determinations. Consequently, Sarrett Plaintiffs cannot rely on only one incident to demonstrate causation.

Finally, Sarrett Plaintiffs also do not sufficiently allege deliberate indifference based on a single incident, because it is not "highly predictable" or "plainly obvious" that failing to train or supervise BFPD officers on filing timely criminal complaints will result in a violation of the right to a prompt probable cause determination. In other words, failing to train or supervise BFPD officers on filing timely criminal complaints does not mean that it is "highly predictable" or "plainly obvious" that those officers will not otherwise ensure prompt probable cause determinations. Sarrett Plaintiffs, thus, cannot rely on a single incident to show deliberate indifference.

For the above reasons, the Court concludes that Sarrett Plaintiffs have not pled plausible official capacity claims against Stidham. Accordingly, the Court grants the Rule 12(b)(6) motion to dismiss the Count IX official capacity claims against Stidham and will dismiss those claims without prejudice.

*2. The Rule 56(a) Motion for Summary Judgment: Individual Capacity Claims and Qualified Immunity*

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id*. At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* The Court may in its discretion decide which of the two-parts of the qualified immunity test to address first. *Id.* at 412.

To hold a supervisor individually liable under Section 1983, a plaintiff must establish three elements: (1) personal involvement, (2) causation, and (3) the requisite mental state. *See Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014). At a minimum, to demonstrate the requisite mental state, a plaintiff must establish "a deliberate and intentional act on the part of the supervisor to violate the plaintiff's legal rights." *Wilson*, 715 F.3d at 858. Precisely what state of mind is required for individual liability depends on the type of claim a plaintiff brings. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). In this case, the Court previously noted that it is not clear whether a deliberate indifference or recklessness state of mind applies.[6] (Doc. 98) at 7-8. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown,* 520 U.S. 397,

---

[6] Sarrett Plaintiffs do not dispute that it is unclear whether to apply a deliberate indifference or recklessness state of mind standard.

410 (1997). "[R]eckless intent is established if the actor was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences." *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1496 (10th Cir. 1992).

Sarrett Plaintiffs only argue that Stidham had the requisite mental state to be held personally liable under Section 1983. The question, then, under the Fourth Amendment is whether Stidham knew or should have known that his actions would result in the denial of Plaintiff Sanchez's right to a prompt probable cause determination, not whether Stidham knew or should have known of untimely filed criminal complaints. The majority of Sarrett Plaintiffs' evidence, such as the affidavits from the magistrate court managers and Quijano's research, however, concern the filing of criminal complaints, not whether arrestees received prompt probable cause determinations. Moreover, the November 28, 2007, letter from the magistrate judges, and the July 8, 2008, letter from former Warden Williams reflect conditions two or three years before the arrest of Plaintiff Sanchez in 2010. Those letters also concern what documentation to provide at the time of booking and the timely filing of criminal complaints, issues "distinct from" whether Stidham trained and supervised Defendant Roberts and other officers to ensure prompt probable cause determinations.

In sum, the Court concludes that Sarrett Plaintiffs have not provided facts from which a reasonable jury could find that Stidham knew that his actions would result in the 2010 deprivation of Plaintiff Sanchez's Fourth Amendment right to a prompt probable cause determination, or that Stidham was aware that his actions created an obvious risk so great that it was highly probable that Plaintiff Sanchez's Fourth Amendment right to a prompt probable cause determination would be violated. Sarrett Plaintiffs, therefore, have failed to present

11

sufficient evidence from which a reasonable jury could find that Stidham acted with either deliberate indifference or reckless disregard toward the Fourth Amendment right of Plaintiff Sanchez to a prompt probable cause determination. Thus, Sarrett Plaintiffs have not carried their burden of showing that a reasonable jury could find Stidham liable under Section 1983 in his individual capacity. As such, Stidham is entitled to qualified immunity on the individual capacity claims and so is entitled to summary judgment on those claims.

IT IS ORDERED that

1. Defendant Joe Stidham's Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted and for Summary Judgment on Grounds of Qualified Immunity and Memorandum of Law in Support Thereof (Doc. 125) is granted;

2. the Section 1983 official capacity claims against Stidham raised in Count IX of Sarrett Plaintiffs' First Amended Class Action Complaint will be dismissed without prejudice;

3. summary judgment will be entered in favor of Stidham on the Count IX Section 1983 individual capacity claims;

4. those individual capacity claims will be dismissed with prejudice; and

5. Stidham will be terminated as a Defendant in the Sarrett lawsuit, Civ. No. 11-1021 KG/SCY.

_____
UNITED STATES DISTRICT JUDGE