IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL WILSON, SR., et al.,

      Plaintiffs,

vs.                                                                      Civ. No. 11-658 KG/SCY
                                                                         Consolidated with
DEPUTY LAWRENCE MONTANO, et al.,                                         Civ. No. 11-951 KG/SCY
                                                                         Civ. No. 11-1021 KG/SCY
      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

      This matter comes before the Court upon the Motion for Summary Judgment by Bosque

Farms and Village of Los Lunas Defendants[1] (Motion for Summary Judgment),[2] filed on August

19, 2015.  (Doc. 124).[3]  Sarrett Plaintiffs filed a response[4] on September 11, 2015, and

Defendants filed a reply on October 12, 2015.  (Docs. 134 and 146).  Having considered the

Motion for Summary Judgment, the accompanying briefs, and the relevant evidence, the Court

---

[1] Plaintiffs Dustin Sarrett, Oscar Leyva, Mark Sanchez, and Patrick Marquez (Sarrett Plaintiffs) sued, among others, Defendants Steven Roberts, Delinda Chavez, Nick Balido, Roy Melnick, and Greg Jones (collectively, Defendants) in Civ. No. 11-1021 KG/SCY.  Those Defendants now bring this Motion for Summary Judgment.

[2] Defendants failed to comply with D.N.M. LR-Cv 7.1(a)'s concurrence requirement when they filed the Motion for Summary Judgment.  *See* Local Rule 7.1(a) ("a motion that omits recitation of a good-faith request for concurrence may be summarily denied.").  Since Sarrett Plaintiffs would not have concurred with the Motion for Summary Judgment, they are not prejudiced by Defendants' failure to comply with Local Rule 7.1(a).  In the interest of justice, the Court will, therefore, decide the Motion for Summary Judgment on the merits.

[3] Unless otherwise noted, citations to the record and pleadings refer to docket entries in Civ. No. 11-658 KG/SCY.

[4] Sarrett Plaintiffs argue, *inter alia*, that the Motion for Summary Judgment is premature, because discovery has not begun.  (Doc. 134) at 10.  Sarrett Plaintiffs, however, do not seek to defer ruling on the Motion for Summary Judgment under Fed. R. Civ. P. 56(d).  Having failed to seek relief under Rule 56(d), the Court will not consider Sarrett Plaintiffs' argument that the Motion for Summary Judgment is premature.

grants the Motion for Summary Judgment, in part, in that summary judgment will be entered in favor of Defendants Jones, Balido, and Melnick on the individual capacity claims brought against them under 42 U.S.C. § 1983.

A.  Background

The Plaintiffs in these three consolidated cases, the Wilson, Ortiz, and Sarrett cases, allege that in 2010 various law enforcement officers within Valencia County arrested them and others similarly situated without warrants and booked them into the Valencia County Detention Center (VCDC).  Plaintiffs allege that VCDC wardens then held Plaintiffs and others without criminal charges having been filed by the arresting officers or probable cause determinations having been made by the magistrate courts.

1.  Claims Relevant to the Motion for Summary Judgment

Sarrett Plaintiffs allege the following Section 1983 claims against Defendants in their First Amended Class Action Complaint.  Count I arises from Bosque Farms Police Department (BFPD) Officer Steven Roberts' warrantless arrest of Plaintiff Mark Sanchez, and Los Lunas Police Department (LLPD) Patrolman Delinda Chavez's warrantless arrest of Plaintiff Patrick Marquez.  In Count I, Sarrett Plaintiffs bring Section 1983 claims against BFPD Officer Roberts and LLPD Patrolman Chavez, in their individual capacities, for violating the Fourth Amendment's requirement for "a prompt probable cause determination by an impartial judge." (Doc. 5), filed in Civ. No. 11-1021 KG/SCY, at ¶¶ 23, 31, and 120.  Generally, a probable cause determination is sufficiently prompt if it occurs within 48 hours of an arrest.  *Cty. of Riverside v. McLaughlin,* 500 U.S. 44, 56 (1991).

In Counts X, XI, and XII, Sarrett Plaintiffs bring Section 1983 individual and official capacity claims against BFPD Chief of Police Greg Jones, former LLPD Chief of Police Nick

Balido, and former LLPD Chief of Police Roy Melnick (collectively, Chief of Police Defendants). In all three counts, Sarrett Plaintiffs allege that the Chief of Police Defendants "established a policy or custom of allowing officers to arrest people and wait before filing charges," and that this policy or custom "in some circumstances … resulted in the arrest and detention of citizens with charges never being filed." (Doc. 5), filed in Civ. No. 11-1021 KG/SCY, at ¶¶ 223, 224, 235, 236, 247, and 248. Sarrett Plaintiffs also allege that the Chief of Police Defendants failed to train and supervise their staff so that they would not violate the Fourth Amendment[5] by arresting citizens who would "routinely [be] incarcerated without pending charges." *Id.* at ¶¶225, 228, 237, 240, 249, and 252. Sarrett Plaintiffs further contend that the Chief of Police Defendants acted with deliberate indifference to the Fourth Amendment violations and that their policies were "a significant moving force behind" the illegal detentions. *Id.* at ¶¶ 226, 230, 238, 242, 250, and 254.

    2. *Facts Presented with Respect to the Motion for Summary Judgment*

        a. *BFPD Officer Roberts and Plaintiff Sanchez*

BFPD Officer Roberts arrested Plaintiff Sanchez on July 1, 2010, and booked him into VCDC that same day. (Doc. 124-2) at 1, ¶ 2 and at 9. The booking form, dated July 1, 2010, and BFPD Officer Roberts' Incident Form, dated July 2, 2010, indicate that a magistrate judge set a $13,000 bond in Plaintiff Sanchez's case. *Id.* at 8 and 9. BFPD Officer Roberts also submitted Plaintiff Sanchez's criminal complaint to the District Attorney's Office. *Id.* at 1, ¶ 5. BFPD Officer Roberts attested that he does not know when that complaint was filed. *Id.* at 1, ¶ 6. The court docket sheet, however, shows that BFPD Officer Roberts filed the criminal

---

[5]Although Counts X, XI, and XII originally included references to violations of the Fifth and Fourteenth Amendments, the Court dismissed the claims based on those alleged violations. (Doc. 159).

complaint on July 12, 2010, and that Sanchez was previously released on July 8, 2010, because no criminal complaint had been filed. (Doc. 134-4) at 2; (Doc. 134-5). Additionally, the court docket sheet does not reflect a bond hearing occurring on either July 1 or July 2, 2010, or any time prior to the filing of the criminal complaint on July 12, 2010. (Doc. 134-4).

### b. LLPD Patrolman Chavez and Plaintiff Marquez

LLPD Patrolman Chavez arrested Plaintiff Marquez on June 15, 2010, on a felony charge and other related misdemeanor charges. (Doc. 124-1) at 1, ¶ 2; (Doc. 134-2) at 4. After arresting Plaintiff Marquez, LLPD Patrolman Chavez "immediately" transported Plaintiff Marquez to VCDC for booking. (Doc. 124-1) at 1, ¶ 3. An LLPD Arrest Report indicates that on June 16, 2010, Magistrate Judge Sanchez set an $18,500.00 bond for Plaintiff Marquez. *Id.* at 6. However, the court docket sheet does not reflect that a bond hearing was held on June 16, 2010, or at any time prior to the filing of the criminal complaint on June 28, 2010, at which time the case was assigned to Magistrate Judge Tina Gallegos. (Doc. 134-2) at 5.

### c. BFPD Chief of Police Jones

BFPD Chief of Police Jones was Chief of Police beginning in May 2010, prior to Plaintiff Sanchez's arrest in July 2010. Doc. 124-5) at ¶ 1. As Chief of Police, Jones "ensured that the police officers with [the] department were trained to file criminal complaints immediately after they made warrantless arrests." *Id.* at ¶ 2. To BFPD Chief of Police Jones' knowledge, BFPD officers acted in accord with that training, and he "was never made aware of any instance where a Bosque Farms police officer failed to promptly file a criminal complaint after making a warrantless arrest." *Id.* at ¶¶ 3 and 4.

### d. Former LLPD Chief of Police Balido

Balido was LLPD Chief of Police from 1998 to November 2008, well before Plaintiff Marquez's arrest in 2010.  (Doc. 124-3) at ¶ 1.  Like BFPD Chief of Police Jones, former LLPD Chief of Police Balido "ensured that the police officers with [the] department were trained to file criminal complaints immediately after they made warrantless arrests."  *Id.* at ¶ 2.  To former LLPD Chief of Police Balido's knowledge, LLPD officers also acted in accord with that training, and he "was never made aware of any instance where a Los Lunas police officer failed to promptly file a criminal complaint after making a warrantless arrest."  *Id.* at ¶¶ 3 and 4.

### e. Former LLPD Chief of Police Melnick

Melnick was LLPD Chief of Police from 2009 to 2014.  (Doc. 124-4) at ¶ 1.  Like BFPD Chief of Police Jones and former LLPD Chief of Police Balido, former LLPD Chief of Police Melnick "ensured that the police officers with [the] department were trained to file criminal complaints immediately after they made warrantless arrests."  *Id.* at ¶ 2.  Also, to former LLPD Chief of Police Melnick's knowledge, LLPD officers acted in accord with that training, and he "was never made aware of any instance where a Los Lunas police officer failed to promptly file a criminal complaint after making a warrantless arrest."  *Id.* at ¶¶ 3 and 4.

### f. Correspondence

Valencia County magistrate judges sent a letter dated November 28, 2007, to law enforcement officials, including former LLPD Chief of Police Balido, stating that it came to their attention that VCDC "does not require a Criminal Complaint/Probable Cause Statement at the time of intake to the facility."  (Doc. 126-3) at 6.  That failure on the part of VCDC apparently became a problem over the Thanksgiving weekend.  *Id.*  The magistrate judges noted that they could not make probable cause determinations within 48 hours after custody commences, as

required by Rule 6-203, NMRA 1998, without probable cause statements and criminal complaints being "filed" at the time of intake at VCDC. *Id.* Consequently, the magistrate judges asked the law enforcement officials to instruct their officers "to file the probable cause statement, at the very least, if not the full criminal complaint at the time of intake." *Id.* The magistrate judges also noticed that "many complaints take several days to get" filed in magistrate court. *Id.*

In a letter dated July 8, 2008, Sarrett Defendant former VCDC warden Derek Williams wrote to law enforcement officials, including former LLPD Chief of Police Balido, that officers must present a criminal complaint and a statement of probable cause to VCDC's records department at the time of intake or the defendant will not be processed. (Doc. 126-3) at 9. Defendant Williams explained that the purpose of this requirement is "to ensure that defendants are afforded due process under the law, to facilitate a probable cause determination and reduce Valencia County's exposure to liability." *Id.* Defendant Williams decided to write this letter after receiving the magistrate judges' November 28, 2007, letter and after it came to Defendant Williams' "attention that some law enforcement personnel was [sic] not leaving the criminal complaints and the probable cause statement at the detention center for each and every detainee." *Id.* at 3, ¶ 14.

### g. *Plaintiffs' Research*

Plaintiffs employed Alejandra Quijano to research the filing of untimely criminal complaints in Valencia County magistrate courts. She produced a list of felony, DWI, and misdemeanor cases "filed between November 2008 and November 2011 in Los Lunas and Belen magistrate courts where complaints were filed more than 48 hours after the listed charge date." (Doc. 134-9) at 2, ¶ 10. Quijano located "1075 cases where the criminal complaint was filed

more than 48 hours after the charge date." *Id.* at ¶ 11.  Sarrett Plaintiffs acknowledge that some of those cases did not involve arrests.  (Doc. 138) at 4, ¶ b.

### h.  Affidavits by Magistrate Court Managers

Teresa Chavez, the Belen magistrate court manager since June 2008, observed that law enforcement agencies, including BFPD, failed to file criminal complaints within 48 hours of an arrest.  (Doc. 129-1) at 1, ¶¶ 1-4.  Chavez noted that this failure to file timely criminal complaints "happened frequently until sometime in 2011, when a procedure was put in place." *Id.* at ¶ 5.  In fact, the clerks at the Belen magistrate court called the records departments of the law enforcement agencies about the failure to file criminal complaints.  *Id.* at ¶ 7.

Carla Gonzales, the Los Lunas magistrate court manager from the early 1990's until 2013, also observed that law enforcement agencies, including BFPD and LLPD, frequently failed to file timely criminal complaints.  (Doc. 129-2) at 1, ¶¶ 1-5.  Gonzales further stated that "there was at least one meeting held with the judges, the various law enforcement agency representatives, and VCDC administrators prior to 2011 discussing the frequency of this problem and the need to stop this practice."  *Id.* at 2, ¶ 15.

### i. Affidavit of Jeffrey Paul Aragon

Jeffrey Paul Aragon was a Valencia County Municipal Judge "at all material times." (Doc. 124-6) at ¶ 2.  Aragon attested that law enforcement agencies rarely failed "to make a reasonable effort to timely present persons arrested on warrantless misdemeanor charges as required by law."  *Id.* at ¶ 5.  Aragon's affidavit, however, is not material or relevant to this Motion for Summary Judgment since Aragon does not detail what "law enforcement agencies" appeared before him, and Plaintiffs Sanchez and Marquez's claims do not involve the Valencia County Municipal Court.

*j.  Affidavit by Defendant VCDC Warden Joe Chavez*

VCDC set bonds for the named Plaintiffs at the time of booking based on a "magistrate court standing bond schedule."  (Doc. 126-4) at ¶ 26.

B.  *The Motion for Summary Judgment*

Defendants move for summary judgment on the Section 1983 Fourth Amendment individual capacity claims on the basis of qualified immunity.  The Chief of Police Defendants, alternatively, move to dismiss the individual capacity claims brought against them pursuant to Fed. R. Civ. P. 12(b)(6).[6]  The Chief of Police Defendants also move for summary judgment on the Section 1983 official capacity, i.e., municipal liability, claims.

Defendants further ask the Court to continue to stay discovery pending resolution of the qualified immunity questions.  The Court has already done so.  *See* (Doc. 151).  Hence, the Court denies Defendants' request to continue the stay of discovery as moot.  The Court will address the Rule 12(b)(6) argument first.

C.  *Discussion*

1.  *The Rule 12(b)(6) Motion to Dismiss Individual Capacity Claims Against Chief of Police Defendants*

Like the Chief of Police Defendants, Defendant Rene Rivera, a former Valencia County Sheriff, moved under Rule 12(b)(6) in the Wilson case to dismiss individual capacity claims, claims almost identical to the individual capacity claims brought against the Chief of Police Defendants, on the basis of qualified immunity.  In May 2013, the Tenth Circuit upheld the

---

[6] Although the Chief of Police Defendants' Rule 12(b)(6) argument cites some official capacity law, the Chief of Police Defendants assert that the individual supervisory claims should be dismissed under Rule 12(b)(6).  *See, e.g.,* (Doc. 124) at 12 (referring to Section 1983 claims against Chief of Police Defendants "based on their supervisory positions…."); 13 ("bare assertions" in First Amended Class Action Complaint "are grossly insufficient to establish supervisory liability.").  The Court, therefore, construes the Rule 12(b)(6) motion to be aimed at the individual capacity claims.

Court's decision to deny Defendant Rivera's motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 859-60 (10th Cir.), *cert. denied*, 134 S.Ct. 426 (2013). Because the Tenth Circuit upheld the Court's decision to deny a motion to dismiss individual capacity claims almost identical to those brought against the Chief of Police Defendants, the Court is compelled for the reasons stated by the Tenth Circuit to, likewise, deny the Chief of Police Defendants' Rule 12(b)(6) motion to dismiss the Section 1983 individual capacity claims on the basis of qualified immunity.

### 2. *The Rule 56(a) Motion for Summary Judgment*

#### a. *The Individual Capacity Claims: Qualified Immunity*

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id*. At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id*. The Court may in its discretion decide which of the two-parts of the qualified immunity test to address first. *Id.* at 412.

#### (1) *BFPD Officer Roberts*

Defendants argue first that BFPD Officer Roberts did not violate clearly established law, because he promptly submitted the booking paperwork and promptly submitted the criminal complaint to the District Attorney's office for approval as required by "established policies and procedures…." (Doc. 124) at 11. Notably, BFPD Chief of Police Jones does not acknowledge a

policy of submitting criminal complaints to the District Attorney's office and, instead, attested that officers are "trained to file criminal complaints immediately after they made warrantless arrests." (Doc. 124-5) at ¶ 2. Nevertheless, the Court ruled in the Ortiz case that "[c]ompliance with internal procedures is not a per se defense to charges of unconstitutional conduct." (Doc. 98) at 5 (citing *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1252 (10th Cir. 2003)). The Court further held that a "policy of forwarding complaints to the District Attorney's office should not have prevented Defendant [Officer] Benavidez from understanding or discharging his constitutional duties." *Id.* The Court noted that Defendant Officer "Benavidez could have complied with the internal policy **AND** monitored the progress of the case to ensure that Plaintiff received a timely probable cause hearing." *Id.* at 6. The Court then determined that "[t]he policy was not incompatible with Defendant fulfilling his constitutional duties." *Id.*

Furthermore, whether BFPD Officer Roberts completed the booking process correctly and followed the District Attorney's office procedure regarding filing criminal complaints does not address the pertinent Fourth Amendment question of whether BFPD Officer Roberts ensured Plaintiff Sanchez a prompt probable cause determination. As the Ninth Circuit explained, the 48-hour requirement under the Fourth Amendment to conduct a probable cause determination "is distinct from" a requirement to promptly file a criminal complaint after a warrantless arrest. *United States v. Bueno-Vargas*, 383 F.3d 1104, 11078 (9th Cir. 2004). The Ninth Circuit stated that "[t]he procedural rules governing the filing of a complaint do not necessarily govern the probable cause determination necessary for the government to detain a warrantless arrestee." *Id.* at 1108. The Ninth Circuit noted that a criminal complaint ensures that a suspect is not arrested without probable cause while the 48-hour requirement ensures "that no warrantless arrestee is detained, pending further proceedings, without probable cause." *Id.* After observing that filing a

criminal complaint within 48 hours could comply with the prompt probable cause determination requirement, the Ninth Circuit "decline[d] to hold that a formal complaint is the only way to present evidence of probable cause to a neutral magistrate judge within 48 hours of a warrantless arrest." *Id.*

In addition, Defendants note that Plaintiff Sanchez actually appeared before a magistrate judge, either on the day of the arrest on July 1, 2010, or the day after, for a bond hearing. Evidence of that appearance comes from the Incident Report prepared by BFPD Officer Roberts and the booking form.  It is, however, undisputed that the court docket sheet shows no court activity prior to the date the criminal complaint was filed on June 12, 2010.  Even more significant is that VCDC, not a judge, apparently set the bond at the time of booking according to a "magistrate court standing bond schedule."  (Doc. 126-4) at ¶ 26.  A reasonable jury viewing the above evidence in the light most favorable to Sarrett Plaintiffs could find that a probable cause determination was not made prior to the filing of the criminal complaint on July 12, 2010, well beyond the 48-hour period for making a probable cause determination.

Defendants further argue that BFPD Officer Roberts did not have the requisite state of mind to be liable in his individual capacity.  Contrary to Defendants' argument, the Tenth Circuit recently held that since the Fourth Amendment protects the right to a prompt probable cause hearing, courts do not consider the state of mind of the government actor.  *Webb v. Thompson*, 643 Fed. Appx. 718, 725 (10th Cir. 2016).  Instead, courts must rely on an objective reasonableness standard.  *Id.*

The Tenth Circuit in *Wilson v. Montano* further determined that a reasonable officer in a situation similar to BFPD Officer Roberts, i.e., an arresting officer who "failed to initiate the criminal process by filing criminal charges or otherwise" ensuring the arrestee "was brought

before a judge for a prompt probable cause determination," would understand that his actions violated the arrestee's "right to a prompt probable cause hearing."  715 F.3d 847, 855 (10th Cir.), *cert. denied*, 134 S.Ct. 426 (2013).  The Tenth Circuit then held that this understanding sufficiently demonstrates the required personal involvement for an officer to be liable under Section 1983 for the deprivation of an arrestee's Fourth Amendment rights.  *Id.*

The Court concludes that viewing all of the evidence in the light most favorable to Sarrett Plaintiffs, Sarrett Plaintiffs have presented sufficient facts from which a reasonable jury could find that BFPD Officer Roberts violated Plaintiff Sanchez's Fourth Amendment right to a prompt probable cause determination, which right was clearly established at the time of Plaintiff Sanchez's arrest.  *See id.*  Consequently, BFPD Officer Roberts is not entitled to qualified immunity on the Fourth Amendment Section 1983 individual capacity claim.

### (2)  LLPD Patrolman Chavez

With respect to LLPD Patrolman Chavez, Defendants contend that Sarrett Plaintiffs' claims are based on warrantless arrests for misdemeanors, not felonies.  Defendants cite NMSA 1978, § 35-5-1 (1996 Repl. Pamp.), which provides that peace officers must take persons arrested on warrantless misdemeanor charges to a nearby magistrate judge "without unnecessary delay."  Defendants argue that because LLPD Patrolman Chavez arrested Plaintiff Marquez on a felony charge, Sarrett Plaintiffs' claims against her should, therefore, be dismissed.

The Court finds this argument unpersuasive for several reasons.  First, Sarrett Plaintiffs correctly allege in the First Amended Class Action Complaint that LLPD Patrolman "Chavez wrote a criminal complaint listing the charges against Plaintiff as two misdemeanor offenses and one felony offense."  (Doc. 5) at ¶ 102, filed in Civ. No. 11-1021 KG/SCY.  *See also* (Doc. 124-1) at 1, ¶ 2; (Doc. 134-2) at 4.  LLPD Patrolman Chavez, thus, did not arrest Plaintiff Marquez

solely on a felony charge.  Second, Count I of the First Amended Class Action Complaint, the Fourth Amendment claim, simply refers to warrantless arrests and does not specify only "misdemeanor" warrantless arrests.  (Doc. 5) at ¶¶ 117-128, filed in Civ. No. 11-1021 KG/SCY. Third, Rule 6-203, NMRA 1998, does not distinguish between felony and misdemeanor charges when it requires magistrate judges to conduct probable cause determinations within 48 hours after custody begins.  Finally, the United States Supreme Court has clearly held that "anyone arrested for a crime without formal process, whether for felony or misdemeanor, is entitled to a magistrate's review of probable cause within 48 hours…." *Atwater v. City of Lago Vista*, 532 U.S. 318, 352 (2001) (citation omitted).

Next, Defendants observe that Plaintiff Marquez, in fact, appeared before Judge Sanchez the day after the arrest for a bond hearing on June 16, 2010.  Although the information regarding this bond hearing appears in an LLPD Arrest Report, it is undisputed that the court docket sheet does not indicate any kind of court activity, let alone a bond hearing, occurring prior to June 28, 2010, the date the criminal complaint was filed.  More telling, however, is that VCDC sets bond at the time of booking, not the magistrate court.  A reasonable jury viewing the above evidence in the light most favorable to Sarrett Plaintiffs could find that a probable cause determination was not made prior to the filing of the criminal complaint on June 28, 2010, well beyond the 48-hour time period for making a probable cause determination.

In sum, viewing all of the evidence in the light most favorable to Sarrett Plaintiffs, a reasonable jury could find that LLPD Patrolman Chavez violated Plaintiff Marquez's clearly established Fourth Amendment right to a prompt probable cause determination.  Accordingly, LLPD Patrolman Chavez is not entitled to qualified immunity on the Fourth Amendment Section 1983 individual capacity claim.

*(3)  BFPD Chief of Police Jones*

To hold a supervisor individually liable under Section 1983, a plaintiff must establish

three elements: (1) personal involvement, (2) causation, and (3) the requisite mental state. *See*

*Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014).  At a minimum, to demonstrate

the requisite mental state, a plaintiff must establish "a deliberate and intentional act on the part of

the supervisor to violate the plaintiff's legal rights."  *Wilson*, 715 F.3d at 858.  Precisely what

state of mind is required for individual liability depends on the type of claim a plaintiff brings.

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).  In this

case, the Court previously noted that it is not clear whether a deliberate indifference or

recklessness state of mind applies.[7]  (Doc. 98) at 7-8.  "'[D]eliberate indifference' is a stringent

standard of fault, requiring proof that a municipal actor disregarded a known or obvious

consequence of his action."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown,* 520 U.S. 397,

410 (1997).  "[R]eckless intent is established if the actor was aware of a known or obvious risk

that was so great that it was highly probable that serious harm would follow and he or she

proceeded in conscious and unreasonable disregard of the consequences."  *Medina v. City &*

*Cnty. of Denver*, 960 F.2d 1493, 1496 (10th Cir. 1992).

Sarrett Plaintiffs argue that the evidence contradicts BFPD Chief of Police Jones'

assertions that (1) he ensured officers "were trained to file criminal complaints immediately after

they made warrantless arrests," (2) to his knowledge, BFPD officers promptly filed criminal

complaints after warrantless arrests, and (3) he was not aware of BFPD officers failing to

promptly file criminal complaints after warrantless arrests.  *See* (Doc. 124-5) at ¶¶ 2-4.  As

discussed above, the filing of criminal complaints "is distinct from" ensuring prompt probable

---

[7] Sarrett Plaintiffs do not dispute that it is unclear whether to apply a deliberate indifference or
recklessness state of mind standard.

cause determinations.  To defeat a qualified immunity defense with respect to the Fourth Amendment claims raised in this case, Sarrett Plaintiffs must produce facts from which a reasonable jury could find that BFPD Chief of Police Jones failed to adequately train and supervise officers to ensure prompt probable cause determinations.

The majority of Sarrett Plaintiffs' evidence, such as the affidavits from the magistrate court managers and Quijano's research, and even any evidence of the District Attorney's process for approving criminal complaints, concern the filing of criminal complaints, not whether arrestees received prompt probable cause determinations.  Moreover, the November 28, 2007, letter from the magistrate judges, and the July 8, 2008, letter from former Warden Williams predate BFPD Chief of Police Jones' tenure as BFPD Chief of Police.  Viewing the above evidence in the light most favorable to Sarrett Plaintiffs, a reasonable jury could not find that BFPD Chief of Police Jones knew that his actions would result in BFPD Officer Roberts depriving Plaintiff Sanchez of Fourth Amendment right to a prompt probable cause determination, or that BFPD Chief of Police Jones was aware that his actions created an obvious risk so great that it was highly probable that BFPD Officer Roberts would violate Plaintiff Sanchez's Fourth Amendment rights.  Sarrett Plaintiffs, therefore, have not presented sufficient evidence from which a reasonable jury could find that BFPD Chief of Police Jones acted with either deliberate indifference or reckless disregard toward Plaintiff Sanchez's Fourth Amendment right to a prompt probable cause determination.  Hence, BFPD Chief of Police Jones is entitled to qualified immunity on the Section 1983 individual capacity claims.

*(4)  Former LLPD Chief of Police Balido*

With respect to former LLPD Chief of Police Balido, it is undisputed that his tenure as LLPD Chief of Police ended almost two years prior to LLPD Patrolman Chavez's arrest of

Plaintiff Marquez.  A reasonable jury, therefore, could not find that former LLPD Chief of Police Balido was personally involved in the alleged deprivation of Plaintiff Marquez's Fourth Amendment rights.

Nevertheless, Sarrett Plaintiffs contend that former LLPD Chief of Police Balido knew or should have known about the problem of untimely filed criminal complaints, because he received the November 28, 2007, and July 8, 2008, letters sent by the magistrate judges and Defendant Williams, respectively.  To begin with, the November 28, 2007, letter from the magistrate judges, and the July 8, 2008, letter from former Warden Williams reflect conditions two or three years before the arrest of Plaintiff Marquez in 2010.  Those letters also concern what documentation to provide at the time of booking and the timely filing of criminal complaints, issues "distinct from" whether former Chief of Police Balido trained and supervised LLPD Patrolman Chavez and other officers to ensure prompt probable cause determinations.

A reasonable jury viewing those letters in the light most favorable to Sarrett Plaintiffs could not find former LLPD Chief of Police Balido knew that his actions would result in LLPD Patrolman Chavez depriving Plaintiff Marquez of his Fourth Amendment right to a prompt probable cause determination in 2010, or that former LLPD Chief of Police Balido was aware that his actions created an obvious risk so great that it was highly probable that LLPD Patrolman Chavez would violate Plaintiff Marquez's Fourth Amendment right to a prompt probable cause determination.  Hence, a reasonable jury could not find that former LLPD Chief of Police Balido acted with either deliberate indifference or reckless disregard toward Plaintiff Marquez's Fourth Amendment right to a prompt probable cause determination.  Thus, former LLPD Chief of Police Balido is entitled to qualified immunity on the Section 1983 individual capacity claims.

*(5)  Former LLPD Chief of Police Melnick*

As with BFPD Chief of Police Jones, Sarrett Plaintiffs argue that the evidence contradicts former LLPD Chief of Police Melnick's assertions that (1) he ensured officers "were trained to file criminal complaints immediately after they made warrantless arrests," (2) to his knowledge, LLPD officers promptly filed criminal complaints after a warrantless arrest, and (3) he was not aware of LLPD officers failing to promptly file criminal complaints after a warrantless arrest. *See* (Doc. 124-4) at ¶¶ 2-4.

First, Sarrett Plaintiffs argue that the fact that LLPD Patrolman Chavez did not file a timely criminal complaint against Plaintiff Marquez necessarily shows that former LLPD Chief of Police Melnick did not train her to promptly file criminal complaints.  As discussed above, the filing of criminal complaints "is distinct from" ensuring prompt probable cause determinations. To defeat a qualified immunity defense with respect to the Fourth Amendment claims raised in this case, Sarrett Plaintiffs must produce facts from which a reasonable jury could find that former LLPD Chief of Police Melnick failed to adequately train and supervise officers to ensure prompt probable cause determinations.

Second, Sarrett Plaintiffs, as before, point to the November 28, 2007, and July 8, 2008, letters as evidence that former LLPD Chief of Police Melnick knew or should have known of problems arising from the failure to file timely criminal complaints.  As with BFPD Chief of Police Jones, the letters predate former LLPD Chief of Police Melnick's tenure as LLPD Chief of Police.

Third, Sarrett Plaintiffs cite the magistrate court managers' affidavits and Quijano's research to show that former LLPD Chief of Police Melnick knew about the untimely filing of criminal complaints.  The question under the Fourth Amendment, as discussed previously, is not

whether criminal complaints were timely filed, but whether arrestees received prompt probable cause determinations.

Viewing the above evidence in the light most favorable to Sarrett Plaintiffs, a reasonable jury could not find that former LLPD Chief of Police Melnick knew that his actions would result in LLPD Patrolman Chavez depriving Plaintiff Marquez his Fourth Amendment right to a prompt probable cause determination, or that former LLPD Chief of Police Melnick was aware that his actions created an obvious risk so great that it was highly probable that LLPD Patrolman Chavez would violate Plaintiff Marquez's Fourth Amendment right to a prompt probable cause determination. Sarrett Plaintiffs, therefore, have not presented sufficient evidence from which a reasonable jury could find that former LLPD Chief of Police Melnick acted with either deliberate indifference or reckless disregard toward Plaintiff Marquez's Fourth Amendment right to a prompt probable cause determination. Accordingly, former LLPD Chief of Police Melnick is also entitled to qualified immunity on the Section 1983 individual capacity claims.

### b. The Official Capacity Claims Against Chief of Police Defendants

Defendants argue that the official capacities claims against the Chief of Police Defendants are subject to summary judgment as a matter of law, because BFPD Officer Roberts and LLPD Patrolman Chavez did not violate the Fourth Amendment rights of Plaintiffs Sanchez and Marquez, respectively. Defendants state well-established law that "a municipality cannot be held liable where no constitutional violation by its police officers occurred." (Doc. 124) at 16 (citing *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154-55 (10th Cir. 2001)). Since the Court declines to grant summary judgment with respect to BFPD Officer Roberts and LLPD Patrolman Chavez, Defendants' argument necessarily fails. Consequently, the Court denies Defendants' request for entry of summary judgment on the Section 1983 official capacity claims brought

against the Chief of Police Defendants.

IT IS ORDERED that

1.  the Motion for Summary Judgment by Bosque Farms and Village of Los Lunas

Defendants (Doc. 124) is granted in part;

2.  Defendants' request to continue to stay discovery is denied as moot;

3.  summary judgment will be entered on behalf of the Chief of Police Defendants on the

Section 1983 individual capacity claims; and

4.  those claims will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE